MONROE & BROTHER v. W. L. BUCHANAN AND OTHERS.

A. and B. proposed to exchange their respective homesteads. But on B.'s homestead there was an incumbrance which he was unable to discharge. To obviate this difficulty and consummate the exchange. it was agreed between A. and B. that A. should raise by mortgage on his homestead an amount equal to the incumbrance on B.'s. Accordingly, A. borrowed the amount from C., and executed to him his note with a deed of trust upon his homestead to secure its payment. A. and B. then interchanged conveyances and possession. In the conveyance from A. to B., the condition was stipulated that B. should pay off the note and deed of trust executed by A. to C.; but B. gave no written assumpsit of the debt. *Held*, that, under these circumstances, B. acquired only the equity of redemption of the property conveyed to him by A.; that the debt to C. was, in truth, a part of the purchase money of the property, and constituted a right in the property prior and superior to the homestead privilege of B., which could not attach in his favor until the debt was discharged. *He'd*, further, that B. and his representatives could not invoke the statute of frauds to defeat the enforcement of the trust against the property,—nor even, it seems, to resist a personal recovery against them.

Under the above circumstances, B. having died without paying the debt to C., the latter, as trustee, proceeded to sell the property. At the sale, D.

16*

became the purchaser at a sum sufficient to discharge the debt to C., who, upon its receipt, delivered up to A. his note, and conveyed the property to D., who, thereupon, sued the administrator and widow of B., and obtained judgment against them for the property in the District Court, with a writ of possession, under which he was placed in possession of it. On appeal, however, the Supreme Court reversed the judgment on the ground that the sale by C., after the death of B., was void, and conveyed no title to D. *He d*, now, that such void sale did not discharge or extinguish the debt charged upon the property by the deed of trust; that the surrender of the note to A. by C. was immaterial; that D., as assignee of the rights of C., could enforce the incumbrance against the property by suit against the administrator, widow and heirs of B.; and that A. was not a necessary party defendant to such suit.

Equity will not only hold that to have been done which should have been done; but, in proper cases, will hold that which should not have been done, to be still unperformed.

In equitable actions, when all the necessary parties have not been made, and no exception is taken for the want of them, the usual and better practice appears to be, not to dismiss the suit upon the hearing, but to continue it with an order to make the parties.

Where a jury has been waived and the cause submitted to the court below, as well upon the facts as the law, it is usual for this court, when the judgment is reversed, not to remand the case, but to pronounce such judgment as should have been rendered in the court below, provided it is apparent from the record that the proper judgment can be rendered here. But when it is apparent from the record that the proper judgment cannot be rendered in this court, the case, upon reversal, must be remanded to the District Court for further proceedings.

ERROR from Gonzales. Tried below before the Hon. Fielding Jones.

This suit was instituted by the plaintiffs in error, Hugh W. and John Monroe, on the 28th of March, 1859, against W. L. Buchanan, as the administrator, Sarah J. Wyatt, as the widow, and others, as the minor heirs of William H. Wyatt, deceased. The object of the suit was to subject certain lots in the town of Gonzales, occupied by the widow and heirs of Wyatt, deceased, as their homestead, to the satisfaction of a certain deed of trust.

In this case, a jury was waived and the whole cause submitted to the district judge. There was no conflicting evidence as to any of the material facts. They are briefly: That on the 13th November, 1856, William M. and Mary J. Phillips executed and de-

livered to Everett Lewis a deed of trust on certain real estate in the town of Gonzales, to secure the payment of a promissory note for $750. That said deed of trust was made for the reason that said Phillips and wife were about to barter their said real estate for other like property in the town of Gonzales, owned by William H. Wyatt, the intestate of Buchanan, and Sarah J. Wyatt, his wife. The property of Wyatt and wife was at the time encumbered for about the sum of $750, and the property of each being supposed of about equal value, it was understood by and between Wyatt and wife, and Phillips and wife, that the latter should also encumber their property for about the same amount, since the former could not raise the money to clear the encumbrance on their property. Phillips and wife, therefore, borrowed of Everett Lewis the sum of $750, and executed the said deed of trust to secure its payment. After this was done, to-wit: On the 15th November, 1856, Phillips and wife and Wyatt and wife exchanged their above described property.

The deed from Phillips and wife to Wyatt and wife contains the following clause: "Provided and upon condition, however, that said Wyatt and wife, or assigns, will pay off and satisfy a certain note for the sum of seven hundred and fifty dollars, made, executed and delivered to Everett Lewis," (referring to the above described mortgage,) "by us dated 13th of November, A. D. 1856, and bearing even date with a deed of trust upon the above described premises, by us given to said Lewis to secure the payment of said sum of seven hundred and fifty dollars, due nine months from the date of said note; otherwise said Wyatt and wife shall have and these presents shall be construed to be a conveyance with existing encumbrances of said deed of trust, and merely a quit-claim subject to the legal and equitable consequences of a sale under said deed of trust."

It was in evidence that W. H. Wyatt is dead; that subsequent to his death, Lewis, the mortagee or trustee, proceeded to sell the land encumbered as aforesaid; that at such sale the land brought the amount of the note, and that Monroe & Bro. were the purchasers; that after the sale was made, the note was delivered to W. M. Phillips, one of the payors of the note.

A suit was then instituted in the District Court of Gonzales county by Munroe & Bro., to recover possession of the real estate so purchased, and was finally disposed of in the Supreme Court, wherein this court held that the sale by Lewis under the trust deed, after the death of Wyatt, was void, and that Monroe &. Bro. took nothing by their purchase.

The note, however, having been delivered to W. M. Phillips, one of the payors after the sale was made as aforesaid, Lewis, about the 19th of January, 1859, transferred a copy of the note, together with the original deed of trust, to Monroe & Bro.

It was also in evidence that the original note had been lost or destroyed. The copy of the note was also proven. On the 26th of January, 1859, H. W. Monroe and John Monroe made affidavit to their claim against the estate of W. H. Wyatt, and presented as evidence of such claim the copy of the note, together with the affidavit of its loss or destruction, by W. M. Phillips; also, the mortgage from Phillips and wife to Lewis, and also the deed from Phillips and wife to Wyatt and wife.

The claim was thus presented to Buchanan, the administrator of Wyatt, and on the same day, January 26th, 1859, was rejected.

On the 18th of January, 1859, appellants dismissed and discontinued their suit for the possession of the real estate purchased at the trust sale, and on the 28th of March, 1859, filed this suit against the administrator to have the claim allowed, and the real estate covered by the trust deed having been used as a homestead by Wyatt and wife in his lifetime, his heirs were made parties.

The case, as before stated, was submitted to the court, and judgment was rendered in favor of defendants, and plaintiffs appealed.

*Mills & Harwood, Flournoy & Carter,* for the plaintiffs in error.

*Parker & Miller,* for the defendants in error.

MOORE, J.—The fact is patent that Wyatt and wife purchased the property from Phillips and wife, subject to the debt charged

upon it by the mortgage to Lewis. The lot was thus encumbered with their consent, and by an agreement and understanding between all parties that it should be done, that the proposed exchange of lots might be consummated. Until the debt to Lewis was discharged, Wyatt and wife were, at most, entitled merely to the equity of redemption of the lot. (Dunlap v. Wright, 11 Tex., 597.) The debt was created with reference to the agreed manner in which it should be secured, and must be regarded, as in truth, a part of the purchase money which Wyatt and wife were to pay for the lot. And although they purchased the lot for a homestead, and occupied it as such, yet they did so, knowing the fact that it was charged with an encumbrance, which gave a superior right to their homestead privilege, and that this could not attach to the lot until this encumbrance was discharged. Has the mortgage debt been paid? If not, it is evident that the plaintiffs were entitled to a judgment, unless they failed to show that it was due to them, or if they were entitled to the debt, the security for its payment in favor of Lewis, the original payor, did not enure to them; or there was such error or defect in the manner in which the plaintiffs were seeking to enforce their rights, as required the court, on hearing the case, to enter judgment against them.

Has the debt secured by the mortgage to Lewis been discharged? The appellees insist that it has. If so, it is evident that it has not been paid by Wyatt and wife, or by the property upon which, by their express agreement, it was charged; and which evidently was to be the primary fund, from which payment of it was to be looked, if, in any event, Phillips and wife were to be liable for it. Can the appellees insist that the debt was paid by the illegal and void sale of the mortgage property? We think not. This court, in the case between the parties in which the present appellants were seeking to establish a title as purchasers under this mortgage sale, say: "But after his (Wyatt's) death, the power being thereby revoked, the sale by the trustee was unauthorized, and, consequently, inoperative to foreclose the equity of redemption remaining in his legal representatives; was not binding upon his estate, or effectual to give title to the purchaser at the sale." Shall it be said, that although the sale was inoperative to pass the title

of the mortgaged property, yet it was effectual to extinguish the mortgage debt; it was void as to Wyatt's estate, but valid as to the purchaser? Such a suggestion is too glaringly inconsistent, as well as repugnant to every principle of equity and good conscience to be entitled to a moment's credence. The attempt to sell the lot by Lewis, the trustee, was without authority; his deed to the purchasers vested no title in them. For aught that appears in the present record, they might, if Lewis had refused to refund their money, have compelled him to do so. That he and Phillips and wife should have voluntarily consented to do so; or in lieu of an actual restoration of the money paid by the appellants, should have subrogated them to the rights of Lewis, in the note and mortgage, is not a matter of which appellees can complain. The lot was still chargeable with the debt; the lien upon it was not extinguished, and equity required, if necessary, that justice might be done all parties, that the note, although lost or destroyed, and the mortgage should be recognized as a subsisting and valid charge upon the lot. It is a familiar maxim, that equity will hold that as having been done which should have been done; and it is equally true, that in proper cases calling for its application, the converse of this proposition is as well established, and will hold that which should have not been done as being still unperformed.

It is a matter of no importance whether the note was in actual existence or not, or whether it was still susceptible of assignment as negotiable paper. The facts show that the debt evidenced by it was unpaid, and that Phillips and wife and Lewis had, for an adequate consideration, passed it to the appellants, together with the lien, for its security, as far as they could do so. And having been duly authenticated and presented to the administrator, (if, indeed, that were necessary,) and rejected by him, appellants were authorized to bring suit to establish and enforce it; and as the proceeding was for the purpose of subjecting the homestead to sale, the heirs of Wyatt were properly joined with the administrator as parties.

It may be said, on the other hand, that Phillips and wife were directly interested in the subject matter in litigation, and were not only proper, but necessary parties, and not being before the

court, it properly refused to give a judgment for the plaintiffs. It may be conceded that Phillips and wife might properly have been made parties, but we are not prepared to say that they were necessary ones. The proceeding in this case was not instituted for the purpose of obtaining a general judgment for the debt, but merely to subject a special fund, upon which it had been charged, to its liquidation. This fund or property, to take the strongest view of the matter against Phillips and wife, had been evidently looked to, and regarded as the primary source of payment. And the only interest that these parties could have had in the present proceeding, was to have seen that the security for the debt, if they are ultimately liable for it, was not misapplied. In this view, it cannot be said that they were such necessary parties, for want of whom a decree should have been refused by the court upon the hearing. Nor does it appear to be the usual or better practice, when all the necessary parties have not been made, and there is no exception taken for want of them, to dismiss a case on the hearing for want of parties; but the court will generally continue it with an order to make the parties.

The objection that the suit was intended to charge Wyatt's estate with the payment of the debt of another party, for payment of which he did not bind himself by a promise in writing, is answered by the fact already adverted to, that the leading object of the suit was not the recovery of judgment against the estate for the debt, but to subject the property charged with its payment for its satisfaction. It presents nothing more than the ordinary case of pursuing a trust fund into the hand of a third party, to whom it has passed. But if the object were to obtain a judgment against Wyatt's estate for the debt, it appears by no means clear that the objection would be well taken. If a party received money from A. to pay to B., the latter may maintain a suit against him for it. And if one, for sufficient consideration, undertake to pay a debt due to another by a third party, such undertaking is not within the statute of frauds. It may, we think, be well said, in view of all the facts in the present case, that it falls within this rule. The debt was contracted with the express understanding and agreement that it was to be liquidated by Wyatt and wife. It was, in fact, a

part of the purchase money of the lot which they were buying, and in the recitals of the deed accepted by them, it is shown that they had bound themselves to pay it. It is true that they were not liable simply and alone upon the note, but the entire transaction, of which the note forms a part, shows that they had undertaken and bound themselves to pay the debt evidenced by it.

On the trial a jury was waived, and the case upon the facts, as well as law, was submitted to the court; and in such cases it is usual in this court, if it is apparent from the record that the proper judgment can be rendered here, not to remand the case upon its reversal, but to pronounce such judgment as should have been given in the court below. But in the present case, it appears that the appellants are in possession of the mortgaged property; the debt is consequently entitled to a credit to the amount of rents they have received; and as the amount received is not shown, the case must be remanded for further proceedings in the District Court.

The judgment is reversed and the cause remanded.

Reversed and remanded.