JOHN LINNEY V. J. B. PELOQUIN AND OTHERS.

1. In the trial of a contestation of a will, which involved property of greater value than ten dollars, and which was impeached for alleged insanity of the testator, the issue was triable by a jury. (Davis v. Davis, 34 Texas, 15, cited and approved.)

2. The law makes it peculiarly the province of a jury to determine all questions of fact; and when that determination is founded upon legitimate and competent evidence, this court will not interfere to set it aside.

3. The law authorizes parents to disinherit their children; and the exercise of that right does not raise a presumption of insanity of the testator.

APPEAL from Liberty. Tried below before the Hon. W. Chambers.

The opinion of the court presents the material facts of the case.

*Willie & Cleveland,* and *Hancock & West,* for the appellant.—By the statute law of this State the power of disposition by will is absolute and unrestricted. (Pas. Dig. Art. 5361.) "This right of disposition," says Justice Woodward, in delivering the opinion of the Court in Stevenson's Executors v. Stevenson *et al.* (33 Penn. R., 471), "is one of the strongest incentives to accumulate property, and to practice those virtues of industry and frugality which are essential to its accumulation. It is not to be lightly set aside. If the exercise of it contrary to family expectations, is to prove delusion of mind, then it don't exist—there is no such right. Every man, under pain of forfeiting his character for soundness of intellect, is compelled to dispose of his property, not as he prefers, but as those would dictate who are called in this case 'the natural objects of his bounty.'"

" The sound and disposing mind required to constitute testamentary capacity, is one in which the testator is shown to have had, at the making of his will, a full and intelligent consciousness of the act he was engaged in ; an understanding of the disposition he wished to make of his property by will, and of the persons and objects he desired to participate in his bounty." (33 Penn. R., 469 ; 9 Casey.)

Again, says Justice Whepley (4 Dutcher, N. J. R., 277) : " I cannot understand how a testator can have capacity to make one will and not another. It seems a legal absurdity. If he had capacity to make any will, that capacity was sufficient to enable him to make any will, no matter how unjust or unreasonable its provisions may seem to others. *Voluntas stat pro ratione.* I do not mean to be understood as saying that the contents of the will may not often be very important evidence, as the product of his mind, to show the state of that mind ; the character of the stream near its source is often the best evidence of the condition of the fountain. That the will to others not having the means of knowing what the testator knows, not occupying his standpoint, not having lived his life, not having his secret affections and hates, may seem unreasonable, injudicious, and even unjust, is no reason why it should be declared the product of a diseased mind. A testator has a right to make an unreasonable, unjust, injudicious will, and his neighbors have no right, sitting as a jury, to alter the disposition of his property simply because *they* may think the testator did not do justice to his family connexions. Unless the will, on its face, carries clear marks of being the product of a diseased mind, its injustice, its unreasonableness, ought not to be the foundation of a verdict against it. Unless this be the rule, every trial

of the issue of *devisavit vel non* is in danger of becoming a mere review by a jury of the propriety of the testator's conduct in the disposition of his property— an appeal by disappointed heirs or devisees from the testator to a jury of sympathizing friends and neighbors. It is better that occasionally a will, about which there may be some doubt, should be proved and enforced, than to establish rules for the purpose of reaching hard cases, which, in effect, transfer the power of testamentary disposition from a testator to a jury, who must gratify their partialities and affections by frustrating his; who are generous with his property, not their own." We may well adopt the language of the learned judge delivering the opinion from which we have just quoted, with respect to the evidence in this case, when he says: "Upon a careful review of the evidence in this case, I have no doubt of the testator's capacity to make this will, or any other that seemed to him right. There was no evidence upon which a jury should be permitted to find against testamentary capacity." (4 Dutcher, N. J. R., p. 279.)

Again, in Coleman v. Robertson's Executors (17 Ala. R., 88), Chief Justice Dargin says : "Every person has the right to dispose of his property by will as he pleases ; and whether his will be prompted by partiality, pride, or caprice, is immaterial, provided the testator is of sound mind, and the will is not obtained by fraud or undue influence."

"If a testator knows what he is doing, and to whom he is giving his property, his mental capacity is sufficient to enable him to make a will." (9 Iredell, N. C. R., 99.)

"If one has capacity enough to know his estate, the objects of his affections, and to whom he wishes to give it, he may make a will. The mere omission of a child

is of itself no ground for impeaching the testator's capacity." (2 English Ecclesiastical R., pp. 118, 242, 436 ; Richardson, S. C. R. 474.)

The case of Dew v. Clark (3 Adams, 79), relied upon by the contestants, was decided in favor of the only child of the testator whom he had disinherited, upon the ground that the will was the offspring of a "morbid delusion," which dethroned the testator's reason. The facts of that case are unlike this. The testator Stott was laboring under delusions with respect to his only child, from the time of her birth. His treatment of her was cruel, unnatural, and harsh in the extreme ; and with respect to her, he was insane. In that case it was impossible to disconnect the daughter from the subject matter of the will, not simply because she was disinherited, but because of the insanity of the testator with respect to her. Upon a review of that case, which we invite, the court will be satisfied that the will was avoided, upon the ground of the *insane delusion* which was shown incontrovertibly to exist. But it by no means supports the doctrine for which it has been time after time invoked in behalf of disappointed kin, viz., that to use the power of disposition, in opposition to the law of descent, is proof of *insane delusion or insane aversion ;* rightly understood, it means only, that an insane delusion, which affects, enters into, and controls the testator's dispositions, will avoid the testament in that regard.

In the case here at bar, no delusion upon any subject is shown or hinted at in the evidence, not even hatred or extreme aversion to the daughter Nancy—no unkindness, nothing unusual, except that the testator preferred his other children as objects of his bounty.

In the case of Addington v. Wilson (5 Indiana R., 138), Justice Perkins says : "By our law 'a person

competent to make a will may entirely disinherit his children, if he pleases to do so; nor can his motives for such an act, when it is done, be called in question. The right is absolute to dispose of all one's property, over and above the portion required to pay debts and expenses. The hardship of the case, where children are disinherited, is of no weight, further than as a circumstance for the consideration of the jury, in connection with the other evidence submitted, tending to show insanity or other mental defect."

We refer the court to the following authorities: Washington will case, decided by this court; Redfield on Wills, p. 121 to 434; 27 Conn. R., 193; 45 Barbour (N. Y.) R., 86; 28 Id., 653; 39 Id., 373; 33 Penn. R., 469; 2 Bradf. (N. Y.) R., 449; 5 Ind. R., 137; 17 Ala. R., 84; 4 Dutcher (N. J.) R., 279; 2 Green (N. J.) R., 604, 572; 9 Iredell (N. C.) R., 99; 7 Richardson (S. C.) R., 474; 21 Georgia R., 572; 6 Id., 324; 11 Id. 237; Parish will case, 25 N. Y.

If the will of Michael Linney is not a valid will, then no will in this State, which in its provisions departs from the law of descent, can stand. If a testator may not, in his will, consult his likes and dislikes, his prejudices and partialities, then the power of disposition is destroyed, and no man is safe in its exercise. It has been well remarked, that the "freedom of testamentary disposition has been recognized in exact ratio with the progress and civilization of the age." Upon the whole case, as made before the court below, upon the law and the facts, the will should have been admitted to probate, and the decree refusing this should be reversed.

The next question is, whether a new trial will be awarded and the cause remanded to try the questions of the execution of the will and mental capacity of the

testator, or whether this court should now direct such judgment and decree as the court below should have made. We think it clearly competent, nay imperative, that this court should pursue the latter course. We quote from the probate act of 1870 the following provisions bearing on this point:

"SEC. 20. There is no trial by jury in matters of probate, except when expressly provided for by law."

Section 74 provides the mode of proof and procedure in case of *lost or destroyed* will, or where it *cannot* be produced, etc.; and Section 79 requires, that in *such* case the will must be established by a *jury;* and this is an exception to the rule of Section 20. When a will is *produced* in court, the procedure is different—it is determined by the court without a jury. ( *Vide* §§ 75, 76, 78, 79, 80; also, § 58.)

From these references it will appear obvious that a jury trial is not proper in such case as this. Is the statute obnoxious to any constitutional provision upon the subject of right of jury trial? Let us see. Section XII of the Bill of Rights relates to criminal procedure, as is clear. Article V., Section 16, State Constitution, provides: "In all cases of law or equity, *when the matter in controversy* shall be valued at or exceed ten dollars, the right of trial by jury shall be preserved, unless the same shall be waived," etc. Now, surely nothing can be said to be in *controversy* in a case, except what may be the *subject of its judgment in that case.* The only *matters in controversy* in this cause are the execution of the will and the sanity of the testator, and to these, and the grant of letters testamentary or of administration, must its *judgment* be limited.

While it is true that it was error in the court below to submit the cause to a jury, still we say that in pronouncing its judgment, whatever the basis of that judg-

ment, and refusing a new trial, the judgment became binding on the applicant, as much so as if pronounced without a jury. So that the judgment may be regarded in this sense as the "judgment of the court" appealed from. The whole testimony delivered by the witnesses and reduced to writing, in open court at the time, and signed by them, is now before this court. For what purpose should these issues be retried in the court below? To be submitted to a *jury?* The probate act contemplates no such thing, but on the contrary, when the cause is tried on appeal by the Supreme Court, such judgment should be there pronounced as the court below ought to have pronounced. (*Vide* § 426.) "When the certified copy of the *judgment* of the Supreme Court is received, *it* shall be entered of record as *the decision, order or judgment of the district court.*"

This question is considered in the case of Pilling v. Pilling. (45 Barbour N. Y. R., p. 94.) Justice Brock says: "In that case (Mason v. Jones, 2 Bradf., 181) the principle was adopted, that appellate courts, unless limited by statutory provisions, have the power to give the judgment which the inferior tribunal should have rendered." We invite the special attention of the court to that case, and we conclude by remarking, that in this State, while, if the statute were silent, the power exists as in New York; yet, that by the statute it is expressly provided that this power shall be exercised; and if we are correct in the views presented, then this court may well adopt the language of Justice Brock and apply it to this case, "That the deceased was competent to make the will presented for probate. We think the evidence quite conclusive of this question. We must threfore order a reversal of the decree appealed from, and direct, as was done in Coffin v. Coffin,

---

(23 N. Y., 9) that the will stand as a valid instrument, and that the court below admit the same to probate, and issue letters testamentary thereon."

*E. B. Pickett,* for the appellees, filed an able brief, reviewing the evidence with much force.

OGDEN, J.—This was a suit brought in the district court, sitting in probate matters, to contest the last will and testament of Michael Linney, deceased.

The cause was submitted to a jury, and judgment rendered in favor of the protestants, and against the validity of the will; from which judgment John Linney has appealed to this court, and assigns as an error for revision that the cause was submitted to a jury in the lower court.

It appears from the pleadings below and from the brief of counsel in this court, that almost the only question sought to be settled was a question of fact.

And that the right of trial by jury shall be preserved in all such cases, where the amount in controversy shall be valued at or exceed ten dollars, was most definitely settled by this court at its last term, in the cases of Davis v. Davis and Stoneham v. Stoneham, both cases quite similar to the one at bar.

We have re-examined those cases, and see no cause for changing the opinion therein expressed.

The appellant also complains that the court erred in overruling his motion for a new trial.

There appears to have been no exceptions taken to the ruling or decision of the court, upon questions of law, excepting in relation to that portion of the verdict of the jury which was in direct response to the question of sanity or insanity of the alleged testator.

This was purely a question of fact, to be determined

by the jury from the evidence in the case; and the appellant claims that there was no sufficient evidence to sustain that portion of the verdict, and that therefore the court erred in not setting the verdict aside and granting a new trial.

This, indeed, is the only error seriously complained of, and the one upon which he seeks a reversal of the judgment of the lower court.

The law makes it the peculiar province of the jury to determine all questions of fact; and where that determination is founded upon legitimate and competent evidence, the court should not interfere to set it aside.

Perhaps there is no question which has been more thoroughly discussed, or more often decided, by this court than the one now under consideration, and that, too, with great harmony of opinion and unanimity of conclusion.

We refer to a few only of the leading cases: Briscoe v. Bronaugh, 1 Texas, 340; Wells v. Barnett, 7 Texas, 587; Ables v. Donley, 8 Texas, 336; Latham v. Selkirk, 11 Texas, 321; Chandler v. Meckling, 22 Texas, 42; Gibson v. Hill, 23 Texas, 83; Monroe v. Buchanan, 27 Texas, 241; Stroud v. Springfield, 28 Texas, 676. These all agree in the settlement of the question, that where there is a conflict in the evidence the court will not interfere; and where there is no conflict, but a "deficiency, or not a reasonable sufficiency, to satisfy the mind of the truth of the allegation, then the court should interfere and the verdict be set aside."

"In order to justify the court in setting aside a verdict, it is not sufficient that it does not appear clearly to be right, but it must appear to be clearly wrong."

With these rules to direct the intellect, what should have been the judgment of the court on the motion for a new trial, "because the verdict was contrary to the weight of evidence?"

We can see no conflict of testimony in the record of this cause; all the witnesses testify to nearly the same thing, or to certain facts which constituted links to connect the whole history of the case together in harmony.

The alleged testator was an old man, possessing by nature a vigorous intellect, with strong biases and prejudices, and with habits of great care, prudence and economy. Several years ago he took a strong dislike to two of his daughters, and particularly to their husbands, and for five years previous to his death, though they all lived in the same immediate neighborhood, they were not on friendly or even speaking terms.

One of his daughters sued her father for a portion of her mother's estate, which so exasperated him that he was heard to say that he would or had disinherited her or her husband. Sometime before his death he made his will, and did disinherit those two daughters.

The person who wrote the will, and the witness thereto, testified that the testator was perfectly sane. The physician who attended him in his last sickness testified that he was sane. Indeed, no one suspected him of insanity until it was discovered that he had disinherited the two daughters, for whom he had entertained such a dislike.

There was no direct proof that he was insane, nor proof that any one believed him insane. There was proof, however, that he had disinherited his two daughters, and this is claimed to be evidence of insanity.

There was a time in this State when the civil law, and the doctrine of forced heirship, were the law of the land; but that law is no longer in existence here, and it is believed a more wise, just and enlightened law has succeeded, by which any person of proper age, and sound memory, may dispose of all his or her worldly goods by a last will.

The law of the land authorizes parents to disinherit their sons or daughters for any cause, and without any cause ; and when that right is exercised under the law, that act alone cannot be distorted into a presumption of insanity.

Indeed, if some sons, and daughters, too, could fully realize the fact that their right to heirship depended wholly upon their obedience to, and honor, and reverence for their parents, it is believed that the plea of insanity would be much less often set up by children, against their ancestry, than it is now.

It is true that the evidence showed that Linney disliked these two daughters, and their husbands, but it also shows, that they disliked him equally ; and if that fact were to be taken as presumption of insanity, it would apply as well on the one side as the other.

We have examined the whole testimony with care, and have been unable to discover a "reasonable sufficiency of evidence to satisfy the mind" that Michael Linney was insane, either generally or specially, when he made his will, or at his death.

We must, therefore, decide that the verdict of the jury was erroneous, and the court below should have granted a new trial.

The judgment is therefore reversed, and the cause remanded.

REVERSED AND REMANDED.