## HOLLAND v. W. C. BELCHER LAND MORTGAGE CO. (No. 10079.)*

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 16, 1922. On Motion for Rehearing Jan. 20, 1923.)

**1. Mortgages ⊂⊃280(3)—Verbal promise to pay and assume mortgage is valid.**

A verbal promise to assume and pay a mortgage is valid and enforceable in equity, not only by the grantor but by the holder of the mortgage, but such parol agreement must be shown by clear evidence.

**2. Mortgages ⊂⊃280(3)—Agreement of assumption may be incorporated in deed or be outside conveyance.**

An agreement of assumption may be incorporated in the deed, it may be outside the conveyance, it may rest wholly in parol, or may be implied.

**3. Covenants ⊂⊃42(1)—Deed held not to contain a special warranty against mortgage.**

Deed in which grantors covenanted that at delivery they were lawfully seized and possessed of absolute estate in the land, and that it was free and clear from all incumbrances except a named mortgage, and that "they will warrant forever defend the title" to the same, held not to warrant the title against the named debt.

**4. Mortgages ⊂⊃292(5)—In action on note secured by mortgage, neither prior grantor nor subsequent grantee necessary parties.**

In action on a note and mortgage, the payment of which was alleged to have been assumed by defendant on transfer of land to him, neither the prior grantor nor the subsequent grantee or the payee of the note was a necessary party; the action being on defendant's promise to pay the amount of the notes secured by the mortgage, and only a personal judgment sought.

**5. Frauds, statute of ⊂⊃44(4)—Parol obligation of grantee to pay incumbrance not in violation of statute as to agreements not to be performed within one year.**

The parol obligation of the grantee of land to pay an incumbrance thereon is not in violation of section 5 of the statute of frauds, inhibiting an action on an agreement which is not to be performed within one year.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction March 7, 1923.

**6. Frauds, statute of ⬤129(2)—Rule where one side of contract to be performed within one year is performed stated.**

Where one side of a contract is to be performed within a year and is performed, the contract is not within the statute, though the other side may be in its nature incapable of performance.

On Motion for Rehearing.

**7. Mortgages ⬤292(6) — Petition sufficiently alleged defendant's promise to pay note.**

In action on a note and mortgage, in which it was alleged that defendant, as part of the purchase price of the land, assumed and promised to pay the indebtedness, petition *held* to allege an express promise of defendant, made to mortgagor, to pay the amount of the note to the holder and owner of the mortgage and note at the date of the promise.

Appeal from District Court, Tarrant County.

Action by the W. C. Belcher Land Mortgage Company against M. I. Holland. From a judgment for plaintiff, defendant appeals. Affirmed.

C. A. Wright, of Fort Worth, for appellant. C. S. Arnold, of Fort Worth, for appellee.

BUCK, J. This is a suit filed against the appellant by the appellee, as holder and owner of a promissory note and mortgage executed by George Howard and wife to the Southern Trust Company. The note and mortgage were executed June 26, 1916, and were given for and to secure the payment of $1,700, with interest. It was alleged that George Howard and wife subsequently sold the land upon which the mortgage was given, to M. I. Holland, and that in said deal, as a part of the consideration, Holland assumed and promised to pay this indebtedness; that subsequently, the said note and mortgage was assigned and transferred to the appellant here; that through mistake and without consideration the Southern Trust Company executed a release of this mortgage lien; that later Holland sold the land involved, being 100 acres in Bryan county, Okl., to one Marshall, who paid the entire consideration therefor to said Holland. It appears that at the time of the suit both the plaintiff and the defendant below resided in Tarrant county, Tex. Plaintiff sought a judgment against defendant upon the alleged parol assumption by defendant of the incumbrance on the land, made at the time of the purchase of the land by Holland from Howard and wife. The cause was tried before the court, and from a judgment for plaintiff for the amount sued for, the defendant has appealed.

The deed from Howard and wife to Holland is in part as follows:

"Witnesseth, that said parties of the first part for and in consideration of the sum of twenty-five hundred ($2,500.00) dollars, the receipt of which is hereby acknowledged, do give, grant, bargain, sell and convey unto the said party of the second part, his heirs, and assigns, all of the following described tract of real estate, situated in Bryan county, Okl., to wit. * * * To have and to hold the same unto the said party of the second part, his heirs and assigns, together with all and singular the tenements, hereditaments and appurtenances thereunto, belonging, in fee simple forever.

"And the said parties of the first part for themselves and their heirs, executors and administrators, do hereby covenant with the said party of the second part that at the delivery of these presents they are lawfully seized and possessed of an absolute and indefeasible estate of inheritance in fee simple in and to the said real estate and that the same is free and clear of all incumbrances whatsoever save and except mortgages to the Southern Trust Company for $1,700.00 and $170.00 and that they will warrant forever defend the title to the same against all persons whatsoever."

It cannot be said that in the deed the vendee specifically assumed the payment of these notes, secured by the mortgages, nor is it so contended by appellee. The reliance is placed on the parol assumption alleged to have been given. Howard testified as to this matter as follows:

"I am asked to state what occurred at the time I sold this tract of land to Mr. Holland. At the time I sold this land to Mr. Holland, I sold 630 acres of land, and the total consideration, I think, was $14,100, and I think the consideration on this was $25 or $27 an acre, as I remember. We figured up the entire amount that the land came to, and he paid me the amount over and above the mortgages in cash.

"Q. What was he to do in regard to the mortgage? A. He was to pay the mortgages.

"Mr. Conner: We object to that, because it is a conclusion that he was to pay the mortgages.

"The Court: What did he say about paying the mortgages, not whether he was to pay, what was said by you and him with reference to any particular mortgage or this one? A. My understanding was—

"The Court: Not your understanding; just what was said and done.

"Mr. Arnold: Q. Repeat, as near as you can, the conversation that was had.

"The Court: The conversation, not your understanding; that is for the court to pass on, whether there was an understanding. A. As I remember, he agreed to assume—agreed to pay the mortgages on the land.

"The Court: Anything further?

"Mr. Arnold: He agreed to pay all the mortgages on the land, including the mortgages on this particular tract? A. That is the way I remember it.

"On the 29th day of August, 1917, I was connected with the Southern Trust Company. At or prior to that time the Southern Trust Company had never been paid the amount of this mortgage. At or prior to the 29th of August, 1917, the Southern Trust Company had sold

and conveyed the note and the mortgage heretofore introduced in evidence to the W. C. Belcher Land Mortgage Company. I think there was an assignment in blank with the mortgage when it was sold; that is the way we always sell; we sell the note and sign an assignment properly executed in blank. I have had a good deal of experience in the land mortgage business in the state of Oklahoma.

"I think that subsequent to the time that Mr. Holland assumed the note and mortgage in question he paid the interest on the mortgage. I know at the time, when we made this settlement. I think there was—I looked at some books I had; there was a credit on the whole amount; in other words, there was $9,050 of mortgages on the entire tract of land, and this piece of land is described by what we call the Emma Gilmore tract, and there was a $1,700 mortgage, and I allowed him credits on the purchase price of $31.17 to apply on a commission note that was due the 1st of July, 1917, and $42.50 to apply on the interest coupon notes, and, as I remember it, he paid the interest and all items that were due the following July; he purchased this land in the latter part of May; I thought he paid the interest coupons; I didn't look at the book to be sure, but I am certain there was nothing delinquent. I was thereafter in charge of the business of the Southern Trust Company until September, 1919. Mr. Holland never paid the note and the mortgage of $1,700 to the Southern Trust Company.

"The transfer from the Southern Trust Company to the Belcher Land Mortgage Company of the note and the mortgage involved in this suit was by an assignment in blank; in other words, the name of the party to whom it was assigned—it was a custom for us to leave that blank, so if they wished to sell it they could fill in the name of the party to whom they sold it. * * *

"This trade with Mr. M. I. Holland was consummated with him in the office of Messrs. Hatchett & Ferguson in Durant, Okl.; Judge Ferguson and Mr. Holland were there part of the day. Whether he was there all of the day I don't know. I don't remember whether he signed the check in blank and left it with Judge Ferguson to be filled out. Mr. Holland, Mr. Ferguson, and Mr. Arnold were there. Mr. Holland was there a considerable part of the time that day. Whether he remained there the entire afternoon, I don't remember. * * * Mr. Holland was there at the time the trade was made, but as to the closing of it—of the details—I couldn't say. You see we made the trade several days before we closed it up, the deed, etc.

"I delivered the deed to Mr. Holland, and, as I remember, the deed which I delivered to Mr. Holland did not include this Emma Gilmore tract and several other tracts too, but there was a deed, as I remember it, for each allotment or portion of allotment that was transferred to Mr. Holland. I remember distinctly of discussing with Mr. Holland the $1,700 due the Southern Trust Company on the Emma Gilmore tract, together with all of the mortgages on the tracts; we discussed them.

"Q. Can you swear about this mortgage, that he promised you as part of the consideration that he would pay off the note? A. That was

my understanding—that he would pay the mortgage against the land.

"Q. Do you have any recollection of hearing him make any absolute promise as to that? A. I told you my understanding of the matter was that he was to pay all the mortgages on the land.

"The Court: Q. Did you hear him make that statement, that he would do it, not your understanding; did you hear him say specifically, 'I will pay that $1,700 mortgage'? A. I don't know that I heard him say it in just those words; the transaction was some time ago, and the best I can state is my remembrance of it; that he agreed to pay the mortgages on the land. As to the exact conversation, that would tax my memory a great deal. It is not my remembrance of the transaction that he agreed to buy the land subject to the debt."

Holland testified:

"At the time I bought this Emma Gilmore land from Mr. Howard with the $1,700 mortgage against it, which has been introduced in evidence, as to whether I assumed to pay or agreed to pay that note and mortgage, I will state no, I don't remember of having any such conversation. I bought the land for the purpose of trading it.

"I am asked to state what was said and done, as far as I remember, with reference to the buying of the land, the consideration to be paid and the disposition to be made of these notes and mortgages. The attorneys attended to the figuring part for me, and I was not in there but very little that day, the day the transaction was made. I don't remember exactly what the price of this land was, something from $22 to $25 per acre—something like that; I don't remember what the exact price was; it has been a long time. Messrs. Hatchett & Ferguson, the attorneys, represented me and also Mr. Howard, and they drew all of this business up, and they fixed all of this business up; I was in and out of there. I left it to my attorneys to fix it up, and also to Mr. Howard's attorney. I believe he represented both of us—that is the way I understood it—that he represented both of us, so he just went ahead and fixed this business up; I was in and out of there.

"Q. Do you remember any specific conversation at that time with reference to whether you were assuming the payment of this note, or merely taking the land subject to the note? A. Well, merely taking it subject to it.

"Q. Do you remember any conversation with reference to that point? A. No; I don't remember any conversation."

On cross-examination he said:

"As to whether I ever paid the $1,700, I will state that I have no check to show that I paid it, but I was under the impression when I traded this land to my father that this had been paid. I never paid it. I have no check to show where I paid it.

"Q. Do you have any remembrance of ever having paid that? A. Well, I don't remember.

"Q. You couldn't state now that you ever paid it? A. No; I don't remember.

"It is a fact that you [Mr. Arnold] and Mr. Ferguson were there in Mr. Ferguson's office, and that you did the figuring that day, and that

you talked to Mr. Howard and myself. I don't remember about you figuring the $165 item on the three pieces and so on, but I remember you did the greater part of the figuring.

"I do not remember of having told you there in Mr. Ferguson's office that I was taking on a big load, that I was assuming $9,050. I do not remember of having told you [Mr. Arnold] that. I wouldn't say whether I did say that or didn't; it has been a long time ago.

"I believe that was the first time that you and me had ever met. I remember that you told me that you and Bud were good friends. I do not remember the particular conversation in which you told me that you were surprised at me taking this land, being a young man, and assuming $9,050. I don't remember that particular conversation; I remember that was the first time that I had ever met you."

O. S. Arnold, a witness for plaintiff, testified:

"I want to say that I went with Mr. Howard to consummate the sale of the lands described in the petition of Mr. Holland to the office of Hatchett & Ferguson in Durant, Okl., and at that time the defendant stated to me that he had assumed the payment of the mortgage in question."

Upon cross-examination, he testified:

"This defendant never agreed or assumed to pay that note by anything in writing. He stated among other things that he had assumed a great deal of incumbrance; but the whole list of notes were made up and amounted to $9,050, and he said that he had assumed the payment of that list of notes and mortgages, and that statement was made, as I recall it, on Decoration Day, at the office of Messrs. Hatchett & Ferguson, in Durant, Okl. It was made on Decoration Day of 1917. He said that he had assumed it on the day we closed up the deeds. The deed was signed on the 25th, and was delivered on that date. These oral statements that he made were by him at the same time; they were made as part of the transaction. He did not mention specifically the note sued on; he just said he had assumed the payment of those notes—mortgages. As to whether he said he had assumed the notes and the payment of the mortgage to get the deed, I state he said he had assumed payment of $9,050 worth of mortgages on this land, on this 630 acres that he bought. As I recall the conversation now, it was something like I asked him awhile ago; I had known his father and his brother for a number of years, and that was the first time that I had met him, and I was commenting on his taking this land, this 630 acres of land, and he said, 'Yes,' that he was a young man, and he was taking on a big burden of $9,050 on this land, and we had the mortgages listed; that is my recollection of it.

"The Court: That date was not later than the 25th of July? A. Not later than the 31st of May, 1917, if your honor please."

[1] While both Howard and Holland were somewhat indefinite and uncertain as to the exact wording or even nature of the verbal promise of assumption, if any, yet in deference to the evident finding of the trial court that such a promise was made, and because Howard and Arnold both swore, finally, that it was made, we must conclude that it was made. A verbal promise to assume and pay a mortgage is valid and may be enforced in equity, not only by the grantor, but by the holder of the mortgage, but such parol agreement, made by the grantee at the time of taking a deed of conveyance to real estate, must be shown by clear evidence. Jones on Mortgages, vol. 2, p. 142, § 740a; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667.

In Beitel v. Dobbin, 44 S. W. 299, writ of error denied, the San Antonio Court of Civil Appeals, speaking through Mr. Justice Neill, says:

"When one makes a purchase subject to a mortgage, and promises, as a part of the consideration, to pay the mortgage, and retains the amount due on it out of the purchase price, he is liable in an action by the mortgagee, upon the principle that, when a person makes a promise to another for the benefit of a third person, such third person may maintain an action thereon, and such promise, though verbal, is not within the statute of frauds. Association v. Attebery (Tex. Civ. App.) 42 S. W. 571; Jones, Mortg. §§ 750, 751; Morris v. Gaines, 82 Tex. 255, 17 S. W. 538; Monroe v. Buchanan, 27 Tex. 241; Muller v. Riviere, 59 Tex. 640; Pickett v. Jackson (Tex. Civ. App.) 42 S. W. 568. It has been held, even in the absence of a promise to pay, that when the purchaser holds out of the purchase money the amount due on a prior mortgage upon the property conveyed, he will be held to have assumed the debt secured by it."

[2] An agreement of assumption may be incorporated in the deed; it may be outside the conveyance; it may rest wholly in parol, or may be implied, and is not within the statute of frauds. 27 Cyc. p. 1344, and notes; 19 R. C. L. p. 381, § 152; Jones on Mortgages, § 148, p. 142; Van-Meter v. Poole, 130 Mo. App. 433, 110 S. W. 5; Mitchell v. Bldg. & Loan Association, 49 S. W. 624, by this court.

[3] Appellant urges that the warranty contained in the deed specifically warranted the title against this particular debt, and that under such circumstances reliance could not be had upon a prior parol agreement to assume the mortgage debt. He cites such authorities as Page on Contracts, § 2197, p. 382. He urges that where an oral agreement to assume a mortgage contradicts a covenant of general warranty, such oral agreement must be excluded, and cites in support thereof Rooney v. Koenig, 80 Minn. 483, 83 N. W. 399, by the Supreme Court of Minnesota. We do not construe the deed as written, and, as claimed by appellant, contains a special warranty against the incumbrances mentioned. At most there is only a general

HOLLAND v. W. C. BELCHER LAND MORTGAGE CO.

807

(248 S.W.)

warranty of title. Some of us think the Minnesota case can be distinguished from the instant case. In that case the vendor subsequent to the sale acquired the outstanding superior title, and the court merely held the subsequently acquired title inured to the benefit of the grantee. But our own Supreme Court has held that parol evidence is admissible, under a deed of general warranty, to show that the grantee by parol agreed to assume the payment of the incumbrance. Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845. In this opinion Chief Justice Gaines discusses the question very fully, and cites the various holdings in different jurisdictions. He notes that Massachusetts, and apparently Minnesota, and other states, hold contrary to the conclusions reached by the Texas Supreme Court, but nevertheless he unmistakably and positively lays down the rule that parol evidence is admissible to show an assumption by the grantee of the incumbrance, even as against a general warranty in the deed. Johnson v. Elmen has been followed by our courts in numerous decisions. Morris v. Hesse (Tex. Civ. App.) 210 S. W. 710; Manton v. City of San Antonio (Tex. Civ. App.) 207 S. W. 951; Delano v. Delano (Tex. Civ. App.) 189 S. W. 972; Robinson v. Clymer (Tex. Civ. App.) 170 S. W. 107; Bone v. Smith (Tex. Civ. App.) 164 S. W. 922, writ denied.

[4] We do not think either Howard, as prior grantor, Marshall, as subsequent grantee, or the Southern Trust Company, as assignee of the notes and mortgages, was a necessary party to this suit. There was no effort to foreclose the mortgage lien in this suit. It was merely an action on Holland's promise to pay the amount of the notes, secured by the mortgage, and only a personal judgment was sought or had.

[5, 6] Nor do we think the obligation on the part of Holland to pay the encumbrance was in violation of section 5 of the statute of frauds (Rev. Stat. 1911, § 3965), which inhibits an action being brought "upon any agreement which is not to be performed within the space of one year from the making thereof." The parol promise alleged to have been made by Holland was in part consideration of the conveyance by Howard and wife to Holland of the land in controversy. Howard performed his part of the contract by executing the conveyance. Where one side of a contract is to be performed within a year, and is performed, the contract is not within the statute, although the other side may be in its nature incapable of performance. Miller v. Roberts, 18 Tex. 16, 67 Am. Dec. 688; Castleman v. Sherry, 42 Tex. 59; Ponce v. McWhorter, 50 Tex. 563; Showalter v. McDonnell, 83 Tex. 158, 18 S. W. 491.

All assignments are overruled and the judgment is affirmed.

### On Motion for Rehearing.

In response to appellant's request for additional findings, we find that the release executed by the Southern Trust Company was dated August 29, 1917. The mortgage which it purported to release was executed by Howard and wife June 26, 1916, and was assigned by the trust company to the plaintiff in this case on July 3, 1916. As between the appellant here and the appellee, such release did not affect the binding force of the parol assumption by appellant at the time of the purchase of the land by him on or about May 25, 1917.

A. B. Richardson testified that he was the vice president of the Belcher Land Mortgage Company, and that the said company owned the note and mortgage executed by Howard and wife on August 29, 1917, when the Southern Trust Company executed the release; that to his knowledge, the Belcher Land Mortgage Company never authorized the execution of such release. Howard testified that the Southern Trust Company did not execute the release for his use and benefit, and did so without his knowledge that at the time of the release the company had a president and two vice presidents, he being one of the vice presidents; that the president or either of the vice presidents, when joined by the secretary, could execute a release. This release was executed by E. L. Wakeman, a vice president; that the only way witness could account for the release being executed was that Holland had executed a note for $3,000 and a mortgage in substitution of a former note for said amount, and that he thought that in releasing the first $3,000 note and mortgage, and on account of the "similarity of the two names," the second release was executed; that he knew the second release was a clerical error; that it was customary to have in the office releases signed in blank, and the secretary, in the absence of the vice presidents, would execute releases when needed; that he supposed that the release of the $1,700 note and mortgage was executed under such circumstances. Arnold, secretary of the Southern Trust Company, while testifying, was not asked by either party anything concerning this release.

[7] Appellee pleaded:

"That on the 25th day of May, 1917, in Bryan county, Okl., the said Geo. C. Howard, joined by his wife, sold and conveyed the above-described land to the defendant, M. I. Holland, for a consideration of $800 in money and the assumption by said Holland of the payment of the note and mortgage hereinbefore described, and the said defendant expressly promised and agreed to, and thereby became bound to pay to this plaintiff, as the owner and holder of said note and mortgage, the amount of said note with interest as in said note specified, according to its tenor and effect, and did thereafter pay part of the interest thereon."

"That on the 17th day of December, 1917, the defendant, M. I. Holland, joined by his wife, sold and conveyed the above-described land to one J. F. Marshall, who paid the entire consideration therefor to the said defendant, who, notwithstanding the fact that he had assumed the payment of said sum of $1,700 and interest to the order of Southern Trust Company, and well knowing that said amount, together with interest thereon, was the property of and belonged to said Southern Trust Company, or its order, received said sum and converted the same to his own use and benefit, and has ever since refused, and now refuses, to pay the same, or any part thereof, to this plaintiff as transferee of said Southern Trust Company, and plaintiff further shows to the court that said note is past due and is wholly unpaid, and that the said defendant, although having promised and agreed to pay said note, and although frequently requested so to do, has failed and refused, and still fails and refuses, to pay the same, or any part thereof, to plaintiff's damage in principal, interest, and attorney's fees in the sum of $2,150."

In our judgment, the allegations are sufficient to allege an express promise on the part of Holland made to Howard to pay the amount of the note to the Belcher Land Mortgage Company, the holder and owner of the mortgage and note at the date of the promise, and that such promise was made for the benefit of the appellee. Also, we think the evidence sufficient to sustain this allegation. We do not think this conclusion is in conflict with Bledsoe v. Wills, 22 Tex. 650, and Phoenix Lbr. Co. v. Houston Water Works, 94 Tex. 456, 61 S. W. 709, relied on by appellant.

We do not feel justified in disturbing the conclusions reached in our original opinion that Howard and Arnold finally testified that the verbal promise was made by appellant to assume the $1,700 note. It is true that the deed from Howard to Holland is dated May 25th, and that Arnold testified that according to his remembrance his conversation and business dealings with Holland took place on Decoration Day, May 30, 1917; that he had never met Holland before this. But even if Arnold was not present at the time Holland promised Howard to assume the $1,700 note and mortgage, he did testify that Holland stated to him that he was assuming $9,050 indebtedness on the 630 acres bought. This was, at any rate, corroborative of Howard's statement that Holland had agreed to assume the $1,700 note. We do not think it can be reasonably held that the $1,700 note was in addition to the $9,050 in indebtedness, but we feel that, in deference to the imputed finding of the trial court, and by reason of the testimony of Howard and Arnold, we must conclude that there was a total indebtedness of $9,050.

The motion for rehearing is overruled.