HENRY GIBSON v. S. W. HILL.

Where the judgment of the District Court has been once before reversed, and the cause remanded for another trial, because the verdict was not supported by the evidence, and on a second trial, the verdict of the jury, upon very nearly the same testimony, resulted as did the first; this court, although unwilling to disturb a second verdict, will again reverse the judgment, if the case present no conflict, but only a deficiency of testimony to support the verdict.

In a case involving the question, whether a conveyance was fraudulently made to hinder or delay creditors, if the vendor and vendee reside together, there should be the most indisputable evidence of good faith in the contract of sale; for, from the very nature of things, it is almost impossible to tell with whom the possession of the property does, in point of fact, remain.

See this case, for circumstances which were held insufficient to support a verdict in favor of the claimant of property levied upon as that of the defendant in execution, where the conveyance to the claimant was alleged to have been made to hinder and delay creditors.

APPEAL from Calhoun.    Tried below before the Hon. Fielding Jones.

Henry Gibson, the appellant, recovered a judgment in the District Court of Matagorda county, against Claiborne Hill and William M. Varnell, on the 20th October, 1856. On the 29th October, 1856, execution issued, directed to the sheriff of Calhoun county; and on the 21st November, 1856, it was levied on certain slaves, as the property of, and found in the possession of, Claiborne Hill, one of the defendants.

On the 25th November, 1856, S. W. Hill, the son of Claiborne Hill, made affidavit, setting up claim to the negroes levied on, and executed a bond to try the right of property; which, with the copy of the original execution, and indorsement of the sheriff, was returned to the District Court of Calhoun county.

Gibson alleged in answer, that the claim of S. W. Hill was fraudulent and void, and made to hinder and delay creditors. Issue was joined; and there was a verdict and judgment for the claimant, at the Spring Term, 1857. From this judgment there was an appeal to the Supreme Court, where the judgment was reversed, and the cause remanded.

At the Fall Term, 1858, the cause was again tried, and there was a verdict and judgment for the claimant, and from this last judgment, a motion for a new trial having been overruled, the plaintiff, Gibson, again appealed to this court.

On the trial, the claimant, S. W. Hill, relied on a bill of sale from his father, Claiborne Hill, for the negroes levied on, (bearing date 17th October, 1856,) four days before the rendition of the judgment in Matagorda county : the consideration expressed being $1931.13, evidenced by an obligation from S. W. Hill to Claiborne Hill, of same date, assuming the payment of the following debts for his father : 1. Of $413.15, to A. Gillet, secured by mortgage on one of the negroes. 2. Of the sum of $1319, alleged to be due by Claiborne Hill to the estate of his father, Alexander Hill, in the State of Alabama. 3. Of $300, to be paid in cash. The only proof of payment was of the sum of $250 to Buckhart & Sheppard, of Matagorda, and the satisfaction of the mortgage debt to Gillet. There was no proof of payment of the debt in Alabama.

The negroes remained in the possession of Claiborne Hill, (whose residence was Old Indianola, Calhoun county,) after the sale to S. W. Hill, and were so in his possession at the time of the levy.

The only explanation that was given of the fact that possession remained with the vendor, Claiborne Hill, was his own testimony, to the effect "that his son, though absent in Lavaca, at the time of the levy, lived with him; that he kept his trunk and personal effects at his house ; that his son was in the habit of spending much of his time, at the period of the levy, in Lavaca, for the purpose of 'endeavoring to get into business ;' that it had always been customary for his children to make their father's house head-quarters and home, when not engaged in business." And the testimony of one Varnell, " that S. W. Hill resided with his father, Claiborne Hill ; was backward and forward between Indianola and Lavaca, a good deal, about the time of the levy ; but was not engaged in business ; that S. W. Hill was in the habit of residing with his father, when not engaged in busi-

ness." C. C. Howerton testified that he considered and recognized S. W. Hill as a resident of the town of Lavaca; and James Howerton testified to the same effect.

It appeared from the testimony of Claiborne Hill, that "he was afraid Gibson would obtain the judgment against him in Matagorda county: and that the negroes would be seized by Gibson to satisfy his judgment, and prevent him (Hill) from paying the debt to his father's estate in Alabama; that he did not believe his son knew of his indebtedness to Gibson, or his purpose or intention in making the sale, except as specified in the obligation given by him. He never told his son that he intended to prevent Gibson from making his debt out of the negroes."

The valuation of the negroes endorsed on the return of the sheriff was $2500 "subject to mortgage" of $413 to A. Gillet.

In the opinion of the witness, C. C. Howerton, the negroes were worth $3000. The claimant had refused an offer from witness of $2900, and asked him (Howerton) $3000.

*Stockdale, Woodward & Proctor,* for the appellant.—The rule laid down on the former appeal in this case, that possession must, in a conveyance of chattels, follow and accompany the deed, otherwise the conveyance is *primâ facie* fraudulent as to creditors, is believed to be inflexible. The fact of the vendor remaining in possession, without any other proof, creates at once the presumption of fraud; and the deed is void as to creditors. It is not a badge or sign of fraud, but standing alone and unexplained, even if the deed import an adequate valuable consideration, the law pronounces the transaction fraudulent.

The only distinction between the rule enunciated in the case of Bryant v. Kelton and Uzzell, 1 Texas Rep. 415, and the other cases decided by this court, and the rule in the case of Hamilton v. Russell, 1 Cranch, 310, in the Supreme Court of the United States, and in the case of Waller v. Cralle, 8 B. Monroe, 11, and other cases in the federal and state courts, is as to the conclusive effect of the legal presumption. In all of the cases,

the presumption is the same; it is fraud. This court holds it, however, to be a presumption which may be rebutted *aliunde;* while on the other hand, it is held to be a legal conclusion so absolute, that no testimony will be heard *dehors* the deed, to affect it.

If there is an absolute sale, the possession must change. If the possession does not change, it must be in case of a conditional sale, a trust, or mortgage, where the possession is explained on the face of the deed.

"Wherever the whole title is absolutely sold, the property must be transplanted. It must take root in new soil. Its vendor cannot longer enjoy its use without insecurity to the vendee." (Handley v. Webb, 3 J. J. Marshall, 643.)

We hold that upon reason and principle, the explanation of the vendor's possession, to be legally satisfactory and sufficient, must be the same, whether it be taken from witnesses, or appear in the deed. By the rule in this court, the burden of proof is upon the party claiming by the deed, and he must explain by proof legally sufficient.

The only explanation offered by the claimant in this case, is contained in the statements of his father and Varnell; in which an attempt is made to show that he resided with his father, the vendor. This is rendered doubtful by their own statements; and is contradicted by the other testimony. But if true, it is the single fact which is to be taken, if the verdict stands, as fully explaining the vendor's possession.

"In such cases a momentary delivery to the vendee, who immediately lends to the vendor, to be kept at the vendor's risk, will not repel the presumption of fraud." (Goldsbury v. May, 1 Littell, 256; Grimes v. Davis, 2 Id. 242.) A covenant to deliver subsequently does not repel the presumption of fraud. (Brummel v. Stockton, 3 Dana, 134.) The mere living in the same place does not establish a change of the possession, nor explain and rebut the presumption of fraud. (Kendal v. Hughes, 7 B. Monroe, 370, 371.)

In the case of McQuinnay v. Hitchcock, 8 Texas Rep. 33,

it was proved that the vendor had paid a debt by the conveyance, and had contracted to hire the property for a consideration. In this case there is no such proof. The vendor being himself on the stand, proves no hiring of the negroes,—in fact shows no reason why he continued in possession and use of these five negroes, unless it be a reason, that his son, the grantee, had his trunk at his house, and it was his habit, when not in business, to reside with his father. Instead of showing that the transaction is free from fraud, it appears from the testimony of the elder Hill, that so far as he was concerned, there was a positive and actual intent to defraud his creditor, Gibson. He was "afraid" of Gibson's judgment, and wanted to secure his other debts. This he could have done by a trust deed or mortgage, and then Gibson could have taken whatever the slaves were worth over and above the other debts. He does not prove good faith upon the part of his son. He only did not know that his son was aware of his purpose.

It is not necessary, especially in this case, to prove an actual participation in the fraud on the part of the vendee. If he knew of the fraudulent intent of the vendor, or had knowledge of facts sufficient to excite the suspicions of a prudent man, and to put him upon inquiry, it is sufficient. (Mills v. Howeth, 19 Texas Rep. 257.) The payment of a valuable consideration, where the deed is made to hinder and delay creditors, does not avoid the effect of the fraud. The vendee takes nothing by the deed as against creditors. (Moseley v. Gainer, 10 Texas Rep. 393; Wolcott v. Brander, 10 Texas Rep. 419; Mills v. Howeth, 19 Texas Rep. 257; Edrington v. Rogers, 15 Texas Rep. 188.)

When the other facts, beside that of the possession remaining with the vendor, and the legal presumption arising from it are considered, i. e. that the vendor and vendee were father and son; that the vendor was largely indebted, and suit pending at the date of the sale; that the vendor was "afraid" of Gibson's judgment; that the consideration, if fully paid, would be largely inadequate; that but a small portion of the consideration was paid, and that the residue, was a debt out of the state, due to the

estate of the vendor's father, and of ancient date,—a stale demand; that the vendee has had an opportunity to make a thousand dollars by the transaction; all these considered, it seems to the appellant, "that where there is evidence of fraud, so convincing, the proof to rebut it ought to be very satisfactory;" that "all the facts and circumstances necessary to constitute fraud" are established; and that the verdict should be set aside, as showing only "that the definition of fraud was much narrower in the estimation of this jury, than in that of courts of law and equity." (19 Texas Rep. 259.)

*Holt*, for the appellee.

BELL, J.—We are of opinion that the court below erred in overruling the motion for a new trial. The sale of the property was made by Claiborne Hill to his son, on the very eve of the rendition of judgment in favor of Gibson. The execution was issued within ten days of the time of the rendition of the judgment. It was levied within thirty days after the rendition of judgment. At the time of the levy, the negroes were found in the possession of Claiborne Hill, the vendor. The only pretence that there had been any change of possession was, that the son lived with the father, and that the slaves were really in the possession of the son. We think, that in a case like the present, where the vendor of the property and the vendee live together, there should be the most indisputable *evidence* of good faith in the contract of sale, for from the very nature of things it is almost impossible to tell with whom the possession of the property does, in point of fact, remain.

In this case, the principal witness was Claiborne Hill, the vendor. He asserted, of course, that the sale to his son was made in good faith. But he also disclosed the fact, that he made the sale because he was afraid that Gibson would subject the property to the payment of the debt due to him. It is shown that the property was worth nearly three thousand dollars. The consideration of the sale by Claiborne Hill to his

son was less than two thousand dollars, and of that amount less than one thousand dollars is shown to have been paid. There is no evidence that Claiborne Hill owed the debt in Alabama, aside from his own testimony. And it is not unworthy of remark, that on the first trial of the cause, he stated that that debt had been contracted with his father before his death, while on the second trial, he stated that the debt had been contracted with the administrator of his father's estate, after his father's death. The Alabama debt is shown to be of ten years' standing, and it is somewhat remarkable, that the means were never provided for its payment, until three days before the rendition of judgment in favor of Gibson. And it is not shown, that the Alabama debt, or any part of it, has been paid, or that any certain security has been given for its payment.

If the Alabama debt was a *bonâ fide* one, that fact could easily have been shown more satisfactorily than by the testimony of the vendor of this property; and other evidence that such a debt existed ought to have been produced.

This case has been twice tried by a jury. The judgment of the District Court in favor of the claimant of the property, was reversed by this court at its last term, at this place. The second trial, upon very nearly the same testimony, resulted in favor of the claimant of the property. We are loth a second time to disturb the verdict of a jury. If the case presented a conflict of evidence, we would not touch the verdict. But in our opinion, this case presents no conflict of testimony, but a deficiency of testimony to support the verdict. For this reason, we think the court below ought to have granted another trial; and for its refusal to do so, the judgment is reversed, and the cause remanded.

Reversed and remanded.