## A. COOPER V. THE MARTIN BROWN COMPANY.

### No. 2652.

**Fact Case—Fraud—Notice.**—See facts held insufficient to support a finding by the court that a transfer of an insurance policy by merchants who failed in business was void in hands of appellant upon grounds that the transfer was made with intent to hinder and delay creditors, and that appellant knew of such intent and had knowledge of facts sufficient to put him upon inquiry which would have led him to such knowledge.

APPEAL from Tarrant.  Tried below before Hon. R. E. Beckham. The opinion states the case.

*Lockett & Lockett* and *De Berry & Wheeler*, for appellant.— 1.  A fraudulent purchase of insurance policies is not shown where the purchaser honestly believed that his grantor (a merchant) had bought his goods for cash and was not in debt except to the purchaser, and when the circumstances and information of the purchaser would lead a reasonably prudent man to believe such to be the facts, although the purchaser was related to one of the grantors, and bought the policies the day after the fire, and for less than their face value, where there was no evidence that they were worth more than the price paid by the purchaser, who bought before the loss was adjusted.  Bank v. Rhutasel, 27 N. W. Rep., 774; Linninger v. Herron, 25 N. W. Rep., 578; Rinney v. Williams, 1 S. W. Rep., 227.

2.  A purchaser from one who sold with intent to delay, hinder, or defraud creditors must show, as against such creditors seeking to subject the property to the payment of their debts, only two things to make his title good; first, that he paid a valuable and adequate consideration; and second, that he was not chargeable with notice of the fraudulent intent of the grantor, or was without notice of such facts as would put an ordinarily prudent man upon inquiry, provided that if inquiry had been made in their neighborhood it would have led them into possession of such facts as would have shown such an intent of the grantor.

No brief for appellee has reached the Reporter.

HOBBY, JUDGE.—Lockett & Bass being indebted to the Martin Brown Company in the sum of about $7800, and the latter having on January 28, 1887, sued on said indebtedness, garnished the Hibernia Insurance Company upon the ground of its alleged indebtedness to Lockett & Bass. The writ of garnishment was served on January 29, 1887. The garnishee answered on March 22, 1887, that it owed Lockett & Bass nothing, but that it had issued two policies of insurance, each for $1000, one on the goods and the other on the store house of said Lockett & Bass. That the insured property on January 27, 1887, was destroyed by fire, and that the policies had been transferred by Lockett & Bass to A. Cooper, whom they asked to be made a party.

This answer was controverted by the plaintiffs below, the Martin Brown Company, they alleging that Cooper was not the owner of said policies; that Lockett & Bass were largely indebted to them and insolvent when the transfer was made to Cooper, who knew these facts; and that the transfer was fraudulent in law, etc.

Cooper intervened in September, 1887, claiming that he was an innocent purchaser in good faith for value, etc., before the writ was served, and denying the averments of fraud. He also alleged that one of the policies covered the store house of Lockett & Bass, which was their business homestead at the time of its destruction by fire.

The trial by the court resulted in a judgment for the Martin Brown Company against the garnishee, the insurance company, for $1000, with interest at 8 per cent from March 22, 1887, it being for the policy on the goods of Lockett & Bass; and for Cooper for $1000 against the garnishee with 8 per cent interest, this being for the policy on the store house of Lockett & Bass.

Conclusions of fact and law were found by the court, to which Cooper excepted, and the judgment is before us on appeal.

Several errors are assigned, but the principal question in the case is presented by the second, third, and fifth assignments. These controvert the ninth and eleventh conclusions of fact found by the court, to the effect that the appellant Cooper knew of the insolvency of Lockett & Bass, and that the transfer of the policies to him was with the intent to hinder and delay the plaintiffs in the collection of their debt; and that he had knowledge of such facts as would have aroused his suspicions, and should have excited inquiry as to the purpose of the transfer; and the conclusions of law to the effect that the transfer having been so made, and Cooper having notice of the fraudulent intent, it was void and subject to plaintiff's claim. The evidence upon which this conclusion is predicated is substantially as follows:

For some time (about three years) prior to January 27, 1887, Lockett

& Bass were engaged in the mercantile business in the town of Clifton, Bosque County, about five miles from Meridian. They were considered solvent. It was generally understood they were buying and selling for cash, although they sold on credit considerably. Cooper was a brother-in-law to Lockett. He traded with Lockett & Bass, and was treated as other customers were. He was a man of means, a shrewd trader, and prompt to make a trade if it promised profit. He knew nothing of Lockett & Bass's business, although he was frequently in their store. They were men who did not talk of their business, and he made no inquiry concerning it, as he supposed they were buying and selling for cash, and was not aware of the fact that they were indebted to any one except himself. They owed him $2000, the proceeds of payments made by parties owing him, and which was deposited with Lockett & Bass. This was done during January, 1887. About the 7th of January, 1887, Lockett & Bass furnished plaintiff with a statement of their assets and liabilities, and appellant's name did not appear thereon as a creditor. The notes and accounts of Lockett & Bass amounted to about $7000. On the 27th of January, 1887, their store house and goods were destroyed by fire. On the day following, the 28th, about 12 o'clock in the daytime, Bass arrived at Meridian, where he saw Cooper and told him he wanted to pay their debt of $2000 to him and commence business at once, and offered to sell and transfer to him the policies, six in number, covering the house and goods and aggregating $6500. Cooper consulted a lawyer, stated the facts, and being advised that the title would be good, a sale of the same was agreed upon, he paying $5000 for them. The payment was made the next day, January 29, Cooper paying in cash $3000, Lockett & Bass deducting the $2000 they owed him.

It appears to have been generally believed that Lockett & Bass would begin business again after the fire. Cooper made no inquiry at the time of the sale as to their creditors, as he did not know they owed any one except himself. The only trouble he expected was that the insurance companies would make some deduction from the policies.

We do not think that a careful examination of these facts will authorize or support the finding to the effect that Cooper had knowledge of such facts as would have aroused the suspicions of an ordinarily prudent man, and that he had constructive notice of the fraudulent intent of Lockett & Bass in making the transfer. Although the policies were for $6500, only $5500 of this amount was subject to plaintiff's demand, one of the policies for $1000 being on the business house of Lockett & Bass, and therefore not a subject of fraudulent assignment. Cooper paid $5000, and expected a deduction to be made by the insurance companies.

What "facts" disclosed by the evidence were sufficient to have awakened suspicion on the part of Cooper? The circumstance of Bass's offer to sell immediately after the fire is explained by his statement to Cooper

that they wanted to pay Cooper the $2000 due him, and to obtain money to begin business at once. We see no circumstance in the evidence before us which would have made it the duty of Cooper to inquire into their financial condition. They were believed to be solvent, and buying and selling for cash; and it was supposed too that they would go into business at once after the fire. Cooper's business relations with Lockett & Bass were not shown to have been more intimate than were those of any other customer. It does appear that they did not discuss their business with him, and that he made no inquiry of them. It is shown that Cooper's reputation for veracity was good, and that he was a shrewd trader and ready to make a trade that promised profit. It would not seem probable if he suspected Lockett & Bass of being insolvent that he would have given such proof of his confidence in their financial soundness as to have his debtors deposit money to the extent of $2000 with them. He did not buy the notes and accounts of Lockett & Bass, amounting to about $7000.

The assignment complaining of the judgment because it does not allow appellant interest on the $1000 we do not think is supported by the record. The recitals of the decree are that "the garnishee is indebted to Lockett & Bass in the sum of $1000, with interest from March 22, 1887, on policy No. 154,951, * * * and that A. Cooper recover as to the other policy, No. 154,406, on the store building, etc. * * * It is therefore adjudged * * * that the Martin Brown Company recover of said Hibernia Insurance Company said $1000, with interest from this date at the rate of 8 per cent, * * * and that A. Cooper recover from said Hibernia Insurance Company * * * $1000, with interest from this date at the rate of 8 per cent," etc.

In view of what we have said upon the other assignments this would become unimportant if well taken, as it will not probably occur upon another trial.

For the reasons given, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted October 21, 1890.