MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
v. MOLLIE C. HAYWARD.

No. 315.

**1. Jurisdiction to Grant Writ of Error—Settles the Case.**

Suit on life insurance policy. In it was the clause, "I also warrant and agree, that I will not die by my own act during the said period of two years." Defense that the insured had committed suicide. There was a verdict and judgment for plaintiff in the District Court. There was testimony tending to prove suicide. On appeal, the judgment was reversed, "upon the sole ground that the verdict of the jury was against and unsupported by the evidence." Application for writ of error, jurisdiction based on ground that the decision of the Court of Civil Appeals practically settles the case. *Held*, that the application for writ of error involved the decision of a matter of fact, over which the Supreme Court has no jurisdiction ............ 322

**2. Cases Adhered to.**

Land Company v. McClelland Bros., 86 Texas, 187; Railway v. Levine, 87 Texas, 437; Railway v. Echols, 87 Texas, 339; and Railway v. Cannon, ante, p. 312, adhered to. The Supreme Court will not revise an issue of fact where the testimony is conflicting ..................................... 322, 323

**3. Practice.**

On application for the writ, it was granted, one of the judges dissenting. On hearing, another judge concurred with the dissent. The order granting the writ was thereupon set aside and the application dismissed .............. 324

APPLICATION for writ of error to Court of Civil Appeals for First District, in an appeal from Harris County.

The chief justice and the two associates being disqualified, the Governor appointed as special judges in this case and the next following, Hon. F. Charles Hume, chief justice; Hon. W. F. Ramsey and Hon. L. C. Alexander, associate justices.

In application for writ of error it was alleged: In amended motion for rehearing, the appellee stated the proposition, that where suicide is sought to be established by circumstantial evidence, the evidence must be sufficient to exclude with reasonable certainty every other hypothesis of death except suicide. This proposition was overruled, and is made one of the grounds for writ of error.

A note alleged to have been found in the room of the deceased read, according to the testimony of four witnesses for the defendant: "Stuart [the name of the secretary of the manufacturing company of which deceased was a travelling salesman, or had been engaged by it for such service]: Telegraph Sam Allen, Houston, Texas. Have broken the sworn vow; have ceased to be a man. [Signed] R. Hayward." This note was offered in evidence by defendant, or at least its existence and contents were proved, to prove suicide, and the Court of Civil Appeals held, that the finding of the jury that said note did not prove suicide, as alleged, was an erroneous finding, and manifestly and palpably against the evidence, and that such finding of the jury required a reversal of the case, and so held before passing upon the

other alleged errors above referred to, the latter being treated as venial and immaterial, as is evident from the language of the Court of Civil Appeals, that "but for the note they would see no reason to disturb the verdict of the jury."

This holding of the Court of Civil Appeals was alleged as error in the motion for a rehearing, and is again set up as a ground for the writ of error herein prayed for, on these grounds:

1. Because said note did not prove that the assured committed suicide, and the court gave it undue weight and assumed to construe it as a matter of law, whereas it was a matter of fact.

2. If it was sufficient to so show (which manifestly it was not), it did not show that the assured committed suicide by morphine, which, having been alleged by defendant, it was bound to prove, which failure was also set up as a ground for rehearing.

3. Because the holding of the Court of Civil Appeals was, in effect, that the other evidence left the question where the jury placed it, viz: That it was doubtful from the symptoms whether the assured died from morphine poisoning or from apoplexy, and on that point they would not disturb the verdict of the jury; but that they assumed to say that the verdict of the jury in passing upon the weight and force of the note as a probative fact, was erroneous, and alone demanded reversal, which action of the Court of Civil Appeals was an unwarranted assumption of the prerogative of the jury, and was contrary to the repeated decisions of the Supreme Court bearing on the question of setting aside verdicts on the facts; and inasmuch as the note remains and can not be changed, nor can appellee, as is here averred, contradict the evidence as to its existence and contents, and as the Court of Civil Appeals holds that the note alone destroys plaintiff's case, regardless of all other evidence, a writ of error is prayed, that this controlling question may be finally adjudicated.

*Kittrell & Allen,* for application.—Where the judgment of the Court of Civil Appeals reversing a judgment practically settles the case, and this fact is shown in the petition for writ of error, the writ will be granted.    Acts Called Session 1892, chap. 14, art. 1011a, subdiv. 8; 24 S. W. Rep., 504.

The law unquestionably is, that the Court of Civil Appeals can not arbitrarily reverse the finding of the jury, but can only do so when such action is authorized by the rules laid down by this court; and when it assumes to usurp the function of the jury, and say the construction and effect given by the jury to a certain writing is wrong, it then becomes a question of law whether such action of the Court of Civil Appeals is correct and in harmony with law.    It has no right, as a matter of fact, to declare that this note bars recovery; therefore it must assume to construe the legal effect, as a matter of law.    If so, its action is subject to be passed on by this court.

*Clarence H. Miller*, against application.—1. The Supreme Court can not revise the findings of fact by the Court of Civil Appeals. Railway v. Levine, 87 Texas, 437; Bauman v. Jaffrey, 86 Texas, 617; Railway v. Kizziah, 86 Texas, 82; Clarendon v. McClelland, 86 Texas, 179; Meade v. Land Co., 85 Texas, 515; Railway v. Lacy, 86 Texas, 244; Railway v. Ramey, 86 Texas, 455.

2. The finding that Hayward committed suicide was a finding of fact. Ins. Co. v. Tillman, 84 Texas, 35.

### DISSENTING OPINION TO ORDER GRANTING WRIT OF ERROR.

ALEXANDER, SPECIAL ASSOCIATE JUSTICE.—I am constrained to dissent from the opinion of the majority of the court, both on the question of the jurisdiction of this court and of the right of applicant to the writ, if the jurisdiction were undoubted.

This was a suit by the applicant, Hayward, to recover on a life insurance policy, in the District Court of Harris County. There was a verdict and judgment for plaintiff, which judgment was reversed by the Court of Civil Appeals, on the sole ground that there was not sufficient evidence to support the verdict.

The defense of the insurance company relied on was, that the assured had committed suicide, and the policy was thus forfeited. In connection with other facts surrounding the assured before and at the time of his death, was a writing or note found on a table in the room of deceased, purporting to have been signed by the assured, and which the Court of Civil Appeals finds was executed by him. The other facts attending and preceding his death, together with the contents of said note, to say the least, tend strongly to prove suicide. The Court of Appeals, in its opinion, says, that it deems it unnecessary to state other evidence than that immediately attendant upon the death of Hayward, because but for the note found as stated above, there would be no reason to disturb the verdict.

In this condition of the record, it is contended by applicant that this court has jurisdiction to entertain the application, because the judgment of the Court of Civil Appeals practically settles the case within the meaning of subdivision 8 of article 1011a of the Revised Statutes. The applicant avers, that there will be no change in the evidence hereafter about the note referred to, and that the judgment of the Court of Civil Appeals stands as an impassable barrier to any different result. It is also alleged, that this evidence has been perpetuated by depositions. I do not deem it necessary to determine whether this should be considered. Evidence once adduced is preserved when taken orally as well as when in writing, although in less enduring form. It is pertinent to consider what the conditions might be if a writ of error were granted, and this court should, as it might do, affirm the judgment of the Court of Civil Appeals. In this event, the case must be retried in the District Court on the evidence which may then be adduced.

The assurance that applicant does not expect to produce other testimony, it is not doubted, is made in good faith. But in my opinion it is not improbable, from the record, that testimony may be produced which would impair the force of the evidence already adduced, including the note. In such event, certainly applicant would not be precluded from offering it. It is not unusual for witnesses to vary their testimony on successive trials—from defects of memory, from refreshment of memory, and from other causes. To take jurisdiction in such case would enable the applicant to take the opinion of this court on conditions not contemplated by the law. The cases in which an applicant can by stipulation or representation give jurisdiction to this court in cases reversed by the inferior court, are those in which he is bound by his admission, and which, when made, authorizes this court to make or direct a final disposition of the case.

Such would be the case where a District Court sustains a general demurrer to a petition, from which plaintiff appeals, and the judgment is reversed, and the applicant in this court admits that the facts alleged are true. Such is a case where a married woman seeks to set aside a deed for insufficient acknowledgment, and the record shows this to be the only point in the case. Because I believe that the judgment of the Court of Civil Appeals does not practically settle the case, I think the application should be dismissed. I dissent also from the opinion of the majority, because the finding of the Court of Civil Appeals as to the facts was not without evidence, and this court has no legal power to revise this finding.

Delivered May 4, 1895.

ON FINAL DISPOSITION.

RAMSEY, SPECIAL ASSOCIATE JUSTICE.—This is a suit by Mollie C. Hayward against the Mutual Life Insurance Company of New York, on a policy for the sum of $10,000, issued by said company, in her favor, upon the life of her husband, Richard Hayward. The company interposed the defense, that the insured committed suicide, contrary to the terms and express warranty in said policy contained, and that in consequence thereof the policy was avoided. Mollie C. Hayward died suddenly during the trial, and by agreement, and for the purpose of protecting the rights of the beneficiaries under the policy, one W. H. Beasley was appointed temporary administrator of her estate. Before the commencement of the trial the defendant company filed, under the statute, an admission that the plaintiff had a good cause of action, as set out in her petition, except as same might be defeated by the matters of defense pleaded by it.

The condition and warranty pleaded and relied on by the company, as contained in the policy, is in these words: "I also warrant and

agree, that I will not die by my own act during the said period of two years."

There was a verdict and judgment for the plaintiff in the District Court, from which an appeal was prosecuted, in due time and order, to the Court of Civil Appeals for the First Supreme Judicial District. That court reversed the judgment of the District Court, upon the sole ground that the verdict of the jury was against and unsupported by the evidence.    The facts justifying this conclusion of the Court of Civil Appeals are thus summarized by Chief Justice Garrett:

"Briefly stated, the facts show that the insured died at the Hotel Moser, in the city of St. Louis, Wednesday, December 16, 1891.    He was a resident of Houston, Texas, but was in St. Louis for the purpose of preparing himself to go to work as a travelling salesman for the Curtis & Co. Manufacturing Company, of St. Louis, by which he was engaged as such on November 11, 1891; he reached St. Louis about November 20th, and remained there until he died; he was stopping at the Hotel Moser, and went daily to the place of his employers to prepare to start upon his first trip as travelling salesman.    On Monday, December 14th, he was at his employers' place of business, seemed cheerful and in good spirits, and left there, expecting to return about 4 o'clock in the afternoon of the next day.    He did not return, and John Stuart, the secretary of the Curtis & Co. Manufacturing Company, who happened to be in the neighborhood of his hotel, called to see him at his room between 9 and 10 o'clock Tuesday night, and remained with him about an hour, and left him about 10 o'clock.    Stuart found Hayward in his room complaining of a fever and headache; and, as Stuart had heard, he had not been out of the hotel that day.    Stuart saw medicine in the room, but Hayward did not seem to be seriously ill.

"On Wednesday morning, December 16th, between 7 and 8 o'clock, as Patrick Cassidy, houseman for the hotel, was passing through the halls, he heard groaning and heavy breathing in Hayward's room.    He knocked at the door, but receiving no answer, he unlocked it with a pass key and entered the room, where he found Hayward lying on the bed in his shirt and drawers, and partially covered with a blanket. He was unconscious and appeared to be dying, and his skin showed a bluish discoloration.    There was no one else in the room.    Cassidy called for a doctor through a speaking tube connecting the room and hotel office, and Whitsen, the bookkeeper of the hotel, went up immediately.    The two then made an examination of the room.    Cassidy testified, that he 'saw some papers, like powder papers, used by doctors and druggists, open on the table, but their contents were gone.' He also saw on another smaller table a small empty bottle, with no label on it; but could not tell what the contents had been, either by looks or smell.    He looked to see if he could find any trace of morphine or other drugs.    He also saw on the small table some letter heads and envelopes of the Curtis & Co. Manufacturing Company, and on the same

table a note written on a scrap of paper, apparently torn off a letter head. His recollection of the contents of the note was, that it was addressed to some one, he did not remember the name; it directed the person to telegraph some one at Houston, Texas, whose name he didn't remember, and then followed the words: 'I have broken my sworn vow. I have ceased to live, and am no longer a man.' He did not remember whether any name was signed or not. Other witnesses testified as to the existence of the note and its contents. The note was not produced on the trial, but its existence was conclusively established, and as to the contents, the testimony of the witnesses varied but little. It was addressed to John Stuart, and, according to the testimony of John Edmonstone, the police reporter of the St. Louis Republic, who made a copy thereof, it ran: 'Telegraph Sam Allen, lumber dealer, at Houston, Texas, I have ceased to be a man. I have broken a sworn vow. Richard Hayward.'

"Allen testified, that about December 16, 1891, he received a telegram from St. Louis, from the man who kept the hotel where Hayward is said to have died, signed Moser, he thought in substance as follows: 'Sam Allen, Houston, Texas: Richard Hayward dead. I have broken the sworn vow. I have ceased to be a man. R. Hayward.' This telegram he gave to Mrs. Hayward. There can be no doubt that Hayward wrote this note.

"Dr. J. D. Irwin, a witness, testified: 'My name is Judson D. Irwin. I reside in the city of St. Louis, Mo., and am a physician by profession. I graduated from the Rush Medical College, of Chicago, in the year 1879, and have practiced ever since. I remember the death of one Richard Hayward, on or about December 16, 1891, a guest at the Hotel Moser, in the city of St. Louis, Mo. I was the physician in attendance on the said Hayward on the day of his death. I first saw Hayward at about 8 o'clock in the morning. I went to his bedroom in the Hotel Moser and found him in a comatose condition, breathing heavily, with a bluish cast about his face, and he had all the symptoms of a person under the influence of morphine. I gave him the usual remedies for morphine poisoning. He never became conscious, but continued to grow weaker up to the time of his death, which took place between 2 and 3 o'clock that same afternoon. My conclusion was, that he died from an overdose of morphine. I recollect the case, and have also refreshed my memory from the records of the recorder's office. I observed the effects of morphine—deep, heavy breathing, with a slight discoloration of the skin, contraction of the pupils of the eyes, and unconsciousness. In my opinion, as a physician, an overdose of morphine was the cause of Hayward's illness and his death.' On cross-examination, Dr. Irwin stated, that there was no post-mortem examination of the body. Hayward was in an unconscious condition when he first saw him, and remained so all the time up to the time of his death. He made no analysis of any bottle found in the room. He remem-

bered a small bottle or vial in the room, but at the time he testified he did not remember whether there was a label on the bottle or not.

"Dr. Beasley testified, that he had known Hayward for about eight years, and had attended him in sickness several times. The last time he had treated him was for apoplexy, about eight or nine months before his death. He had noticed this apoplectic tendency in Mr. Hayward the one time; that was eight or nine months before he went to St. Louis. He thought the external conditions of Hayward as related by counsel were not conclusive proof of morphine poisoning. There was much expert medical testimony as to whether the conditions indicated morphine poisoning or apoplexy, the decided weight of which was, as we think, that morphine poisoning was the cause of the death.

"In order to show a motive for the commission of suicide, the defendant showed that Hayward was involved in debt; but on the other hand, it appeared that he was cheerful and anxious to get started upon his trip. Evidence that he was drinking to excess while he was at the hotel was met with evidence not only as to his general temperate habits, but the testimony of Stuart and others with whom he was associated in St. Louis, that he was daily at his work and drank nothing during the day, except perhaps a glass of beer at luncheon. We have not deemed it necessary to state other evidence than that of facts immediately attendant upon the death of Hayward, because, if it were not for the note which was found upon the table in the room, there would be no reason to disturb the verdict of the jury. The note, however, can not be accounted for upon any other hypothesis, consistent with the facts in the case, than that Hayward died by his own hand. It is a stubborn fact, which must be considered in the determination of this issue. As before stated, there can be no question as to its existence and authenticity. It was addressed to John Stuart, the secretary for the company for which Hayward worked, and the friend who had given him employment. It requested Stuart to telegraph Sam Allen, of Houston, Texas, a man who was also his friend, something, which, under the circumstances, must necessarily be of his death. We need not inquire why he had ceased to be a man, or what sworn vow he had broken, except to say, that this language is not consistent with the theory that the morphine was taken accidentally. The verdict was contrary to the evidence, and against the manifest weight of the evidence."

It must be evident, therefore, that there was cogent and convincing evidence supporting the conclusion of the Court of Civil Appeals, that Richard Hayward committed suicide. It is not a debatable question, that the court on a consideration of all the evidence found, as a distinct fact, that he did commit suicide. This, then, was their judgment upon the facts, and this judgment is certainly not without evidence for its support.

The Act of the Legislature of this State, approved April 13, 1892, among other things, provides, that the *judgment* of the Court of Civil

Appeals shall be *conclusive* upon the facts of a case; and if the judgment of the Court of Civil Appeals reversing the judgment of the District Court, upon the ground that the verdict of the jury was unsupported by the evidence, was but a decision on the facts and a judicial expression of the opinion of that court as to what the testimony proved, there would seem to be no question but that their conclusion as to the effect and probative force of the evidence is not subject to review by this court.

The defense interposed involved of necessity an issue of fact; the evidence offered by the defendant was tendered to support this issue; the verdict of the jury involved indisputably a finding that there was no suicide proven; and when it was decided by the Court of Civil Appeals that this verdict of the jury was unsupported by the evidence, there would seem to be no escape from the conclusion that this action of the Court of Civil Appeals involved an exercise of their judgment on the facts; and that this judgment was, in effect, that Richard Hayward did commit suicide, as alleged by the defendant company in its answer. It may be, that in some sense the action of the Court of Civil Appeals in reversing the judgment of the District Court may be said to be an exercise of their judgment as to a matter of law; but if it be conceded that the court found that Hayward committed suicide, this legal conclusion would confessedly follow. It is said by the Supreme Court, in the case of Land Company v. McClelland Bros., 86 Texas, 187, that "to recite the uncontroverted facts of a case demands no act of judgment in the sense in which that term is used in the statute. What is meant is, that the decision of that tribunal upon questions of fact, that is to say, questions upon which there may be some conflict in the evidence, shall be final, and not the subject of review in this court." Now, then, in this case, was not the issue of fact of prime importance: did Richard Hayward commit suicide? Was not the testimony, to put it as favorable to the plaintiffs in error as the record will justify, on this issue conflicting? Has not the Court of Civil Appeals expressed their deliberate judgment and recorded their opinion that the whole testimony shows as a *fact* that Richard Hayward committed suicide? This was as much a fact to be found as that (in the absence of any admission) a policy was issued, or that insured had died. If this judgment of the Court of Civil Appeals on the facts is not conclusive on this court, it would seem that in every case where the jury had found a fact to be true, that a contrary finding of the Court of Civil Appeals might be wholly disregarded by this court, and in such character of cases their judgment on the facts would not be conclusive.

The case of Railway v. Levine et al., 87 Texas, 437, sustains this view. There had been a verdict against the railway company in that case for the value of certain cotton alleged to have been burned by the negligence of the company. On appeal to the Court of Civil Appeals, the judgment of the District Court was affirmed. The railway

company made an application to this court for a writ of error. In passing upon the application the Supreme Court say: "Plaintiff in error claims that there was no evidence of negligence on the part of the defendant, and that the court erred in submitting that issue to the jury. If this contention as to the evidence is sound, the application should be granted. It is the established law in this State, that when fire is set out by sparks from an engine on a railroad, the law presumes negligence, and the plaintiff is entitled to recover for damages done by the fire so set out, unless the railway company shall prove that its engine was provided with the best approved apparatus for arresting sparks and preventing their escape, and properly operated. In other words, the proof that the fire which destroyed plaintiff's property was set from an engine on defendant's railroad made a prima facie case, upon which he was entitled to recover, in the absence of proof by the railroad company required to rebut the presumption. Consequently the question as to negligence or not becomes a question of fact to be determined upon the evidence. The credibility of the witnesses and the weight to be given to their evidence are matters to be decided by the jury. It is apparent, therefore, that it can not be said that there is no evidence of negligence, when the evidence is such as to give a right of recovery if not rebutted. This being the case, it is not within the power of this court to determine the issue made by the evidence; it is a question of fact; and no matter how overwhelming the rebutting evidence may be, the Constitution and laws of the State have denied jurisdiction to this court. We would not be understood as asserting that a jury may with impunity disregard evidence and find against it, but the authority to set aside a verdict in such cases is vested, first in the judge of the District Court, and secondly in the Court of Civil Appeals. However much we might differ with the Court of Civil Appeals as to the effect of the evidence in this case, we must, in the exercise of the jurisdiction conferred upon this court, abstain from assuming authority delegated to that court."

The case of Railway v. Echols, 87 Texas, 339, even more strongly supports our view. That was a suit by Echols against the Texas & New Orleans Railway Company for damages for personal injuries received while in its employment. The jury found, under instructions of the trial court submitting that issue to them, for the plaintiff, on the ground that the defendant had failed to provide the plaintiff with a reasonably safe place in which to work. "The Court of Civil Appeals," say the Supreme Court, "ignored this issue, and found that the railroad company was guilty of negligence and liable to the plaintiff, because it did not prescribe rules and regulations for the performance of the work whereby the plaintiff would have been protected from the negligence of other employes. By this they virtually found against the plaintiff upon the issue on which his case was tried in the District Court. In fact, the court discredits the only evidence upon which

plaintiff's claim that the place was rendered unsafe by reason of the improper directions of the defendant's foreman, is based, and finds that no directions were given for securing the remaining portion of a stack of ties. This court is bound by the facts found by the Court of Civil Appeals, at least where the evidence is conflicting, as in this case, and we have no authority to go behind the action of that Court, whatever might be our opinion on the subject. If the Court of Civil Appeals had found that the foreman of the defendant gave directions as to the manner of securing the broken stacks, which caused them to be left in a dangerous condition, this court would have been bound by that finding upon conflicting evidence, and we are equally bound when the court has found that no such directions were given. It is the province of the jury first to pass upon the facts, and the Court of Civil Appeals is vested with authority to review their finding thereon; but this court has no such authority, if there be any evidence to sustain the conclusions of the Court of Civil Appeals. If we should do as requested and look to the facts, this court would usurp the authority of another court, and deprive the defendant of his right to have the judgment of the Court of Civil Appeals upon the questions of fact."

Again, in the case of Railway v. Cannon, ante, p. 312, Chief Justice Gaines, speaking for the court, says: "There was a conflict in the evidence adduced upon the trial; and there are assignments which claim, in effect, that the verdict of the jury upon material issues is against such a preponderance of the testimony that it ought to be set aside. It is also claimed, that damages awarded by the verdict are excessive. It is not only the peculiar province of the Court of Civil Appeals to determine the questions so presented, but their determination of such issues is final."

Further elaboration or discussion is deemed unnecessary. These cases, and the opinions here expressed, will illustrate our view of the question before us.

The writer joined in granting the writ of error in this case, though then having some doubt as to whether a writ should have been granted. Subsequent investigation and reflection has convinced him that this court is without jurisdiction to review the only question which would have justified us in granting the writ of error.

It is therefore adjudged by the court, that the order heretofore entered herein granting a writ of error be set aside, and that the application be dismissed, at the cost of the applicant therefor.

*Order granting writ of error set aside, and application dismissed.*

Delivered June 14, 1895.

### DISSENTING OPINION.

HUME, Special Chief Justice.—I find myself unable to concur with my brethren in the opinion and judgment just rendered.

The nature and history of the case, as well as the substance of the evidence, are substantially reflected by the opinion. A few further details may be appropriately added.

The assured never made a vow to Allen. Deputy Coroner Meade, on the testimony of Dr. Irwin and Cassidy, found that the death was by morphine. Steadman was in the assured's room about 10 o'clock a. m. of the day of the death; noticed on the bureau a small, widemouthed, empty bottle, labelled "Quinine;" looked around the room with great care, and found no other evidence of medicine. Dr. Beasley had treated cases of apoplexy, and had been in contact with those of morphine poisoning. Was familiar from personal experience with the effect of an overdose of morphine. Intoxication by whisky was dangerous to one susceptible to apoplexy. There was evidence tending to show that the victim of morphine poisoning could usually be aroused; but not so in cases of apoplexy. Also, that without an autopsy it would be impossible to determine the cause of death in a case of the symptoms stated; that in the last stages, even with knowledge of the external appearances, it was very difficult to distinguish between morphine poisoning and apoplexy. The assured had come at night to the hotel more than once during the two weeks next preceding his death, disabled more or less by whisky, and a pint bottle containing a little whisky was found in his room; but no morphine was found or traced in any way.

The controlling assignment of the appealing defendant is in these words: "The verdict of the jury was wholly unsupported by the evidence, in that defendant established by the manifest weight of the evidence, that Richard Hayward did die by his own act, within two years from the date of the issue of the policy."

The order granting the writ of error involved the assumption that the case was within the meaning of subdivision 8 of article 1011a, Revised Civil Statutes, authorizing us to bring here by such writ the reversing judgment of the Court of Civil Appeals, which, though remanding, "practically settles the case;" and the further assumption, that the question presented to us by the application was one to which our jurisdiction extended.

I am still pursuaded that the writ was properly granted, and that the case should now be decided upon its merits.

The application for the writ avers in unqualified terms, that the reversing judgment is of the character defined in the subdivision cited, and I find neither in the opinion nor in the judgment of the Court of Civil Appeals, nor elsewhere in the record, anything to warrant a doubt that the judgment falls within that definition.

In the single fact of the existence and authenticity of the note discovered on the table in the dead man's room, the Court of Civil Appeals finds warrant for reversing the judgment—conceding that, but for that fact, "there would be no reason to disturb the verdict." The testimony as to this decisive fact is by deposition; the fact itself, when

related to its occasion, place, and attending circumstances, is of such kind that knowledge of it must have been confined to few persons, and all known or probable sources of information seem to have been exhausted, and the limit of diligence reached.

It goes without saying, that so long and as often as the case shall be tried on the same facts, and on the declaration of the Court of Civil Appeals of their insufficiency to support a verdict for him, the plaintiff must fail, and that any effort to prosecute the suit to favorable judgment is foredoomed.

It is said now, however, that the decision, or judgment, of the Court of Civil Appeals is on a question or questions of fact, and that we can not disturb it, although we may be of opinion that such conclusion is erroneous.

By the Constitution, the appellate jurisdiction of this court extends to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, and the decisions of the courts last named are conclusive on all questions of fact brought before them on appeal or error.    Const., art. 5, secs. 3, 6.

By statute, the judgments of Courts of Civil Appeals are conclusive in all cases upon the facts; petitions for writs of error must show that the errors complained of arose upon questions of law, and that their determination was necessary to the decisions assailed; and in all cases of writs or certificates of error to the Supreme Court the trial shall be only upon the questions of law upon which the writs were allowed. Sayles' Supp. Rev. Civ. Stats., arts. 1068 (subdiv. 3), 1011a, 1011b, 1016b.

At and long before the time of the creation of the present judicial system, it was the rule in all common law jurisdictions, that in controversies between litigants on issues of fact determinable only by consideration of and deductions from conflicting evidence, the parties were entitled to trial by jury, and that the verdict of the jury in such case was final, and not subject to reversal by an appellate court.

Such had been the rule of this court time out of mind.    There was, it is true, nothing in the express terms of Constitutions or statutes that inhibited the court's supervision and correction of verdicts, and it perhaps possessed the sheer power of overruling even such verdicts as resulted from the jury's consideration of conflicting evidence.    There are exceptional cases wherein the court has refused to be bound by verdicts, because, as declared, against the manifest weight of the evidence; but these are believed to be cases not presenting sufficient, though conflicting, evidence.    There are also cases exhibiting unmistakable marks of misapprehension or palpable disregard of the evidence on the part of juries, or of such sympathy or prejudice as are inconsistent with the exercise of fair judgment; and in these, too, this court had not hesitated to prevent an obvious wrong by denying conclusiveness to verdicts.    The rule, however, as I understand it, was as stated.

The practice of the court in its treatment of verdicts, whether upon conflicting evidence, no evidence, insufficient or deficient evidence, or against or contrary to evidence, and the distinction controlling it as an appellate tribunal in the disposition of cases referable to the one or the other of these conditions, are indicated in so many opinions that even a partial list of them must seem extended:  Briscoe v. Bronough, 1 Texas, 339; Carter v. Carter, 5 Texas, 100–102; Davidson v. Edgar, 5 Texas, 496; Hall v. Hodge, 2 Texas, 328; Wells v. Barnett, 7 Texas, 587; Long v. Steiger, 8 Texas, 462; Bailey v. White, 13 Texas, 118; Gilliard v. Chesney, 13 Texas, 337; Taylor v. Ashley, 15 Texas, 54; Patton v. Evans, 15 Texas, 365; Garvin v. Stoner, 17 Texas, 300; Stewart v. Hamilton, 19 Texas, 100, 101; Chandler v. Mackling, 22 Texas, 42; Humphreys v. Freeman, 22 Texas, 52, 53; Baldridge v. Gordon, 24 Texas, 288; Howard v. Ray, 25 Texas, 91; Adams v. George, 25 Texas Supp., 376, 377; Powell v. Haley, 28 Texas, 56, 57; Willis v. Lewis, 28 Texas, 191, 192; Stroud v. Springfield, 28 Texas, 676; Linney v. Peloquin, 35 Texas, 29; Jordan v. Brophy, 41 Texas, 284; Edmundson v. Silliman, 50 Texas, 112; Mathis v. Obertheir, 50 Texas, 330; Zapp v. Michaelis, 58 Texas, 275; Railway v. Bracken, 59 Texas, 75, 76; Railway v. Marcelles, 59 Texas, 335–337; Railway v. Schmidt, 61 Texas, 285, 286; Cooper v. Horner, 62 Texas, 363; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 417; Block v. Sweeney, 63 Texas, 427; Ramsey v. Arrott, 64 Texas, 323–325; Railway v. Gilbert, 64 Texas, 541, 542; Railway v. Smith, 65 Texas, 173; Owens v. Railway, 67 Texas, 681; Railway v. Lee, 69 Texas, 560; Stitzle v. Evans, 74 Texas, 600; Oil Co. v. Thompson, 76 Texas, 238; Railway v. Faber, 77 Texas, 154, 155; Floege v. Weidner, 77 Texas, 313, 314; Cooper v. Martin Brown Co., 78 Texas, 221; Easton v. Dudley, 78 Texas, 239, 240; Tel. Co. v. Andrews, 78 Texas, 307; Barth v. Green, 78 Texas, 681; Letcher v. Morrison, 79 Texas, 243; Clark v. Pearce, 80 Texas, 150; Chase v. Veal, 83 Texas, 335.

It seems to be held now, that the decision of the Court of Civil Appeals upon questions of fact, with respect to which there is conflicting evidence, is final, and not subject to review here.   Land Co. v. McClelland Bros., 86 Texas, 187.

This doctrine is not impugned by my contention, that the question whether a verdict is unsupported by the evidence—the question which, as I understand the record, calls here for our decision—is one of law; and that the decision of it by the Court of Civil Appeals is a conclusion of law, and, as such, subject to revision by us.

The assignment maintained is, that the verdict is wholly unsupported by the evidence, in that the defendant established by the manifest weight of the evidence the suicide of the assured, as alleged; and the court declares the verdict contrary to the evidence, and against its manifest weight.

A verdict is unsupported by the evidence, when the evidence, though accorded its full significance, is insufficient to sustain the verdict.   In such case there is a deficiency, not a conflict, of evidence; and the

jury in rendering the verdict commit error of law, which may be redressed by reversal of the judgment on appeal or error. The question of the sufficiency of the evidence to support the verdict is one of law, and determinable as such by the Court of Civil Appeals, and, upon writ of error, by this court.

A verdict is contrary to or against the evidence not when it follows evidence sufficient to warrant it, although such evidence is challenged and disputed by other evidence, but when the jury misconceive the proved facts, and deduce from them a conclusion which the mind is constrained to reject as indisputably unwarranted by, or, as it is sometimes expressed, repugnant to them. · In such case, too, the jury commit error of law subject to correction on appeal, and the issue presented is one of law, as is the judgment resolving it. If the record discloses no or not sufficient evidence to support the verdict, or that, in the meaning of the terms defined, the verdict is contrary to the evidence, this court should affirm the judgment of the Court of Civil Appeals, not because it is based on a conclusion of fact deduced from conflicting evidence, but because it is a correct conclusion of law that there is in the record no or not sufficient evidence to support the verdict, or that the verdict is plainly unwarranted by the facts proved, and the result of misapprehension and perversion of their significance. If the record discloses no or not sufficient evidence to warrant a verdict for the defendant on its single affirmative plea, involving the necessity of its maintenance of the burden of proof, or if there appears sufficient evidence to warrant the verdict rendered for the plaintiff, this court should reverse the judgment of the Court of Civil Appeals, because it sustains an assignment that the verdict is unsupported by the evidence, and thus announces an erroneous conclusion of law as to the existence and legal purport of evidence.

In the trial court, the defendant made express concession that the plaintiff was entitled to recover, unless his right of recovery should be defeated under the defendant's plea that the assured committed suicide by morphine poisoning; and, upon the concession, the defendant assumed the burden of maintaining its plea, and had and exercised the right to open and conclude the case. So the affirmative issue was not the right of the plaintiff to recover, but the right of the defendant to defeat a recovery; and on this issue, the only one made, the defendant was necessarily the actor. The plaintiff must have judgment, unless the defendant could, by a preponderance of the evidence—that is, by the greater weight of credible evidence—persuade the jury that the assured took his life by the use of morphine.

The evidence otherwise being of such nature and potency as to preclude the Court of Civil Appeals from disturbing the verdict, that court fixes on the single fact of the existence and terms of the note referred to as demanding, when considered in connection with other evidence, the reversal of the judgment rendered for the plaintiff, because resting on a verdict contrary to ("unsupported by," is the lan-

guage of the assignment) and against the manifest weight of the evidence. The fact found by the Court of Civil Appeals is, that the note exists, contains certain words, and is authentic; and in the present state of the record, this conclusion stands unimpeached. The issue is suicide by morphine. That issue is not determined as a fact, unless it is so determined by the declaration of the court, that the note can not be accounted for on any hypothesis consistent with the facts save that of suicide, as and by the means alleged in the defendant's plea. The inference or conclusion by the court from one established fact, that another alleged but disputed fact is proven, because the established fact can be accounted for on no hypothesis, consistent with other disclosed facts, but that of the existence of the disputed fact, is, it seems to me, one of law. It is the result of a judicial test of the sufficiency of the established fact, together with the other disclosed facts, to fix, necessarily and beyond contention, the disputed fact. It is as much, and in the same sense, a conclusion of law as is the judgment of a court, that certain alleged facts sufficiently affirm the issue upon the maintenance of which the pleader's right to relief depends.

No one can say that the note of itself proves the suicide of the assured by morphine; and to say that the note, together with the other disclosed facts, establishes such suicide so indisputably as to preclude adverse hypothesis, is to affirm that there is no or not sufficient evidence to support the verdict—and that, too, in a case requiring no evidence to authorize a verdict for the plaintiff, unless and until his prima facie right to recover, challenged and controverted by the self-assumed and aggressive contention of the defendant, is, by evidence, rebutted and overthrown. To so affirm is to decide a question of law.

Randall v. Collins, 58 Texas, 231, was a third appeal to the Supreme Court. The question was, whether a judgment obtained on citation charged to have been falsely and fraudulently returned as served on the defendant, should stand. Reciting the evidence tending to show that citation had not been served, and observing that it might make doubtful the fact of service, but was insufficient to establish satisfactorily, as was necessary in such case, that defendant was not served, the court said: "This is a case where the jury have erred in matter of law; and notwithstanding this is the third verdict, we think the judgment should be reversed and remanded." That is to say, the finding on insufficient evidence that the defendant was not served with citation was a conclusion and error of law, and therefore reviewable and reversible on appeal. The examination by the court of the evidence on which the verdict rested was necessary to its ascertainment of the insufficiency of the evidence to support the verdict. Had that examination, under the rule then obtaining, disclosed a conflict in the evidence—some "satisfactory," though challenged by other—the verdict would not have been disturbed, being a conclusion of fact on sufficient evidence.

So in Gibson v. Hill, 23 Texas, 77. There the claim was that negroes seized on execution belonged to the claimant, who was the son of the execution defendant. The plaintiff pleaded, that the claim was fraudulent and void, and made to delay and hinder creditors. The claimant recovered; the plaintiff appealed, and the judgment was reversed. Another trial resulted as had the first; the plaintiff moved for a new trial, and, failing, again appealed. The judgment was again reversed, because the evidence was insufficient to support the verdict. The court said: "The second trial, upon very nearly the same testimony, resulted in favor of the claimant of the property. We are loath a second time to disturb the verdict of a jury. If the case presented a conflict of evidence, we would not touch the verdict. But in our opinion, this case presents no conflict of testimony, but a deficiency of testimony to support the verdict." Had there been a conflict of evidence—that is, evidence sufficient to sustain the claim of the successful party, although controverted by evidence sufficient to defeat that claim—the verdict would not have been disturbed; because it would have been a finding or conclusion of fact on sufficient evidence, a function properly pertaining to the jury. But since there was a deficiency of evidence, that is, evidence which, though uncontroverted and accorded its full probative force, was still insufficient to support the claim, the error of the jury in its conclusion or verdict was one of law, and therefore subject to revision and reversal on appeal.

Sebastian v. Cheney, 86 Texas, 497, was a suit to recover damages for malicious prosecution. There was a verdict for the plaintiff and judgment thereon in the District Court. Appealing to the Court of Civil Appeals, the defendant assigned as error the refusal to him by the District Court of a new trial, sought there on the claim that there was no evidence to show want of probable cause. The assignment was overruled, and the judgment complained of affirmed. The defendant, as plaintiff in error, renewed his insistence here, contending that the Court of Civil Appeals erred in not sustaining the assignment and reversing the judgment. The court said: "The sufficiency of facts found by the Court of Civil Appeals to support the verdict is a question of law, upon which the court will revise the judgment of that court. * * * The Court of Civil Appeals erred in not reversing the judgment of the District Court, for the reason that there was no evidence that the plaintiff in error acted without probable cause, and because the advice of the county attorney, if given upon a fair statement, is a defense against the action for damages." The judgments of the District Court and of the Court of Civil Appeals were reversed, and the cause remanded for another trial.

If the question there was one of law, so is the question here. There the judgments of both the trial and appellate courts were reversed; the first, because a motion for new trial, affirming that there was no evidence to establish a material fact, was overruled; and the second, because an assignment to the same point was not sustained. Here the

point made by the losing party in the trial court was the same made in the appellate court, namely, that the verdict was unsupported by the evidence, and against its manifest weight. The contention was overruled by the trial court, but sustained by the Court of Civil Appeals. That court considered the "sufficiency of facts * * * to support the verdict;" and in finding them insufficient and contrary to the evidence, decided a question and announced a conclusion of law.

I am not unmindful that in the case cited the reversal followed the ascertainment by this court that the Court of Civil Appeals had erroneously adjudged that there was no evidence to a material fact; but a finding that a verdict is unsupported by or against the evidence, is not less a conclusion of law than is a finding that there is no evidence to a material fact.

Texas & Pacific Railway Company v. Raney, 86 Texas, 363, was a suit for damages for personal injuries inflicted on the plaintiff through the defendant's negligence. The plaintiff recovered judgment, which, on the defendant's appeal, was affirmed by the Court of Civil Appeals. Obtaining writ of error from this court, the defendant relied here on this assignment: "The court erred in not granting defendant a new trial, because there is no evidence to support the verdict, and it could not have been rendered by an impartial jury, which is one of the grounds for a new trial in defendant's motion therefor." The defendant in error insisted, that this assignment did not authorize a review of the evidence to determine its sufficiency to support the verdict. Affirming the judgments of the District and Court of Civil Appeals, the court said: "The last assignment, which asserts that there was no evidence before the jury upon which the verdict could be based, does not call upon us to decide whether or not the evidence is sufficient to sustain the verdict of the jury; but this court is confined to the question, was there any evidence from which the verdict might have been arrived at? We can not say that there was no evidence sufficient to submit to the jury the question of negligence on the part of the defendant. If there is error in this particular, it is not of a character that this court can revise. We feel constrained to say, however, that we could not have reached the same conclusion arrived at by the jury, based upon the improbable story of the plaintiff as to the manner in which the injury occurred."

To authorize a judgment for the plaintiff in the case cited, a verdict for him was necessary on an issue of fact—that is, the alleged negligence of the defendant. Such verdict was found, and by affirming the judgment rendered thereon, the Court of Civil Appeals affirmed that finding. This court, unable to say that there was no evidence sufficient for submission to the jury on the issue made, affirmed the judgment of the District Court and the Court of Civil Appeals, although conceding that it could not have reached the jury's conclusion. The declaration, that "if there is error in this particular, it is not of a character that this court can revise," must mean either

that the evidence was considered by the court as sufficient to warrant the verdict as a tenable, though to the court not satisfactory, deduction from it, and that therefore there was no power in the court to revise it, it being a finding of fact not unsupported by the evidence; or that, independently of the character of the evidence, the court could not enter into the question of its sufficiency, because not invited by the assignment to do so. · If the court thought the evidence insufficient, or deficient in the sense of wanting the probative force necessary to support the verdict, and if it was not precluded by the restrictive form of the assignment from giving voice and effect to its opinion, it could have revised the error · involved in the verdict, and perpetuated in the judgments. · The question presented· to it by the assignment was one of law, namely, whether the verdict· and judgment following it were infected by an error of law, in that the verdict was without evidence to support it. Had the court been informed by the record that there was· no evidence to support the verdict, the nature of the question before it would have been the same, and there would have been a reversal, because of the error of law in finding the fact of negligence without evidence. . Likewise, had the assignment affirmed the insufficiency instead of the nonexistence of evidence to support the verdict, the question for the court would have been still one of law.

·It ·is scarcely needed to add, that the decision or judgment of the Court of Civil Appeals, affirming the judgment of the District Court overruling the motion for new ·trial, was a question of law, namely, whether the District Court erred in refusing a new trial in response to the defendant's claim· that there was no evidence to support the verdict. It was accepted and disposed of here as such a question; for otherwise this court would have been without jurisdiction—if it be true, that it is in all cases concluded by ·a finding of fact by the ·Court of Civil Appeals.

Muhle v. Railway, 86 Texas, 459, was a suit to recover two lots, to condemn which for the defendant's use it appeared that proceedings had been had; but it was claimed by the plaintiff, that the defendant had abandoned the use of the lots, and all intention of using them, for the purpose for which they had been condemned. The District Court, on the issue of abandonment, directed a verdict for the defendant, and there was judgment accordingly, which the Court of Civil Appeals affirmed. Because of that direction, the judgments of the District Court and the Court of Civil Appeals were reversed and the case remanded. The court said: "It is not our province to weigh the evidence or to determine what conclusions the jury should draw from it. But whether or not there was evidence from which the jury might have deduced the conclusion that the company had abandoned any intention ever to use the lots for the purposes of a depot, is a question of law, which we are called upon to determine. A careful examina-

tion of the evidence constrains us to hold, that the question should be decided in the affirmative."

So here, though yet more strongly. The decision is, in effect, that the evidence is deficient in probative force to support the verdict. It is not less a conclusion of law than would be the judgment of a court sustaining a demurrer to evidence, and the issue presented to this court by the impeachment of the decision is one of law.

One essential difference between the majority of the court and myself is this: They understand the question to be, whether there is evidence to sustain the finding of the Court of Civil Appeals, as a fact, that the assured committed suicide as charged; whereas, the question is, as it seems to me, whether the verdict of the jury negativing such suicide is unsupported by the evidence.

I am of opinion that the verdict is neither unsupported by nor contrary to the evidence, and that the error of the Court of Civil Appeals should be corrected here. I can not agree that a litigant can be deprived of his constitutional right of trial by jury by a judgment of that court, sustaining an assignment that the verdict in his favor is unsupported by the evidence, when it seems clear to me that that judgment is an erroneous decision of a question of law. If I am to accept the conclusion of my brethren, it must be upon compulsion of logic that takes no denial.

In view of the direction given the case by the court, it would serve no useful purpose to detail further the reasons for my dissent from its opinion and judgment.

Delivered June 14, 1895.